[Clay, Adm'r, v. Gurley, Adm'r, et al.]

# Clay, Adm'r, *v.* Gurley, Adm'r, *et al.*

## *Bill in Equity to Settle Administration.*

1. *Jurisdiction of Chancery to instruct and direct trustee.*—The limits and extent of the jurisdiction of Chancery to instruct and direct one standing in a fiduciary relation, in the execution of his trust, and the circumstances and class of cases in which the fiduciary can invoke its aid and direction, have not been clearly defined.

2. *Same.*—The most common instances of the exercise of the jurisdiction, are where it has become important to avoid responsibility on the part of the executor, trustee, &c., to have a deed or will, of doubtful meaning or effect, construed ; or where doubts or disputes have arisen concerning the shares of an estate or fund to be distributed, to which the beneficiaries, whether legatees, distributees or creditors, are respectively entitled ; and in some cases (though since the enactment of our statutes regarding the settlements of insolvent estates of decedents, such a bill can rarely be necessary,) to restrain creditors or legatees from prosecuting suits against the personal representative, and compelling them to bring their claims into the Court of Chancery for settlement there, when the assets can not readily be got in, and it is uncertain whether he can safely omit to plead that he had fully administered, or *plene administravit praeter*, a sum required to pay preferred debts.

3. *Same; what not within.*—This jurisdiction can not be so perverted as to allow an administrator, on bill seeking the advice and direction of the court, to place it in the relation of his general legal adviser, as to the validity of claims, or the bringing of suits against persons, who in separate transactions with the deceased, or with the administrators of his estate, may have come under liability to a subsequent administrator ; nor can the court be called on to decide in this way, the right between the administrator and those who, claiming title, refuse to give up property on his adverse demand, or to determine a liability to him of a third person, in no way interested in the distribution of the estate, asserted on the one side and denied on the other.

4. *Bill in Chancery; what multifarious.*—The fact that the bill is filed to obtain the advice and direction of the court, will not authorize the joining in the same bills defendants against whom relief is sought, as to several and independent transactions, with which many of them have no necessary connection or interest; the reason of the rule against multifariousness, applies as strongly to a bill of this kind as to any other.

5. *Declaration of insolvency; effect of.*—A declaration of insolvency of an estate by the Probate Court, upon an administrator's report of its insolvency, does not *ipso facto* terminate his authority; and if he continues to administer the estate afterwards, the creditors not having elected or the court appointed another in his stead, his acts are valid, and the sureties on his official bond remain bound, as much so as if the estate had not been declared insolvent.

APPEAL from Madison Chancery Court.

Heard before Hon. H. C. SPEAKE.

The facts are thus stated by Mr. Justice MANNING :

Complainant, Clay, being recently appointed successor to an administrator *de bonis non* of the estate of Clement N. Vincent, deceased, by the Court of Probate of Madison county, filed the present bill, May 6, 1877, against the adminis-

trators in chief, and the former administrator *de bonis non*, Frank B. Gurley and his sureties, and against purchasers of land of the estate, at sales thereof supposed to be invalid, made by Gurley as administrator, and against subpurchasers from his vendees, and against the heirs and distributees of Vincent, and against the creditors of his estate, the defendants in all exceeding over sixty in number.

According to the bill of complaint, Clement N. Vincent died in 1865 intestate, and leaving a considerable estate. The administrators in chief of it, during their short administration, only effected a partition of certain parcels of land belonging to the estate of said Clement N. and one Ann Vincent, whereby there was allotted by the commissioners, to the estate, the northeast, southeast and southwest quarters of section 33, in township three, &c., which is the land that was to be divided,—although in the order appointing the commissioners and directing the division, the land was described as the same three quarters of section 3 (three) in township 3, &c., while the application filed for the partition could not now be found. The division was confirmed by the Probate Court as made by the commissioners. In August, 1866, the administrators in chief resigned, and they have since filed their accounts in the Probate Court, showing no assets received by them, for a settlement of their administration. It is not shown that there had been any claim set up on the part of said Ann Vincent to the lands so allotted in severalty to the estate of said Clement, or that she has refused to convey or relinquish her interest therein.

Passing from that subject, the bill then alleges the appointment of Frank B. Gurley as administrator *de bonis non* of said estate, on the first day of January, 1867 ; that in October following he filed a petition for the sale of lands belonging to it, and described in the petition, the hearing of which petition was set by the Probate Court for the 16th of December following; that on the 17th of December he filed a report of the insolvency of said estate, with schedules of debts and property thereof, for the hearing and decision of which the 17th day of January, 1868, was appointed ; that on the 19th of the previous month, December, 1867, action was had on the petition, and a decree made authorizing Gurley to sell said lands—upon the terms that one-third of the price be paid in cash and the residue in two equal installments, one and two years afterwards; but that the records of the Probate Court do not show a continuance of the proceeding upon the petition from the 16th to the 19th of December ; that on the 17th of January, 1868, the same court acted upon the report of insolvency and declared the estate insolvent ;

that thereafter the said Gurley " pretended to act as administrator of said *insolvent* estate, but without any order of said Court of Probate appointing him such or continuing him administrator thereof   *   *   *   *   *   [and] without qualifying or giving bond as such pretended administrator "; that so acting, he made and reported sales under the decree aforesaid, of lands of the estate which had been confirmed by the court, March 21, 1868, to divers persons, severally, who are made defendants in this cause, and who made the first payment of one-third of the price in cash, and gave their notes for the deferred installments; that some of these notes had been paid,—whereupon, and under an order of the court, said Gurley, as administrator, made deeds to such as had paid in full; that afterwards, in December, 1874, still acting as such pretended administrator of the insolvent estate, he applied for and subsequently obtained an order of the Probate Court for the sale of other lands of the estate to pay debts, and sold and reported the sale thereof in June, 1875,—which sale was confirmed, and on the payment being made, a deed was executed thereof under an order of the court to the purchaser; that said Gurley has " never filed his account and vouchers for a final settlement of his administration *de bonis non* of the solvent estate of said Clement N., deceased, until the 22d of July, 1871, and said Court of Probate never made any order continuing him as administrator of said *insolvent* estate," and said settlement is still pending and undecided; and that having failed to execute a new bond, as required by the Probate Court, Gurley was, on the 10th of March, 1877, removed from the office of administrator; and on the 17th of the same month the plaintiff in this bill was appointed by the court administrator *de bonis non* of said insolvent estate.   In support of these allegations, a large number of the orders of the Probate Court, and petitions and reports to it, are copied and set out at full length, and a certified transcript of the entire record of the Probate Court is also appended to the bill as an exhibit.

The bill then, through a number of pages more, sets forth " a list of the creditors who have presented claims against the estate of said Clement N. Vincent, deceased, together with a description of their claims," amounting to a large number, and these claims are again set out at length in the exhibit to the bill.

Plaintiff then further alleges that Gurley, the administrator, and his sureties, are insolvent; that Gurley has wasted and misapplied the moneys he has received by the sales, and is unable to pay any part of the same; that he did not receive all of the purchase money for the lands sold, and

orator does not know how much he has received, and prays a discovery thereof by this bill; that Gurley made payment therefrom to some of the creditors without any order of the court, but how much and when orator does not know, and prays discovery. It is next alleged, "That many of the creditors of said estate claim that" certain sales of the land by Gurley are invalid, and as to them and orator as their representative, ought to be vacated and annulled, because the order for their sale was made "not at a regular or special term of the Court of Probate and on a day to which the proceeding for the sale had not been regularly continued, and because the day appointed for the hearing of the application for sale and the day the order of sale was made were both less than forty days subsequent * * * to the date upon which the order was made appointing the day for the hearing of said application; "that many of the creditors of said estate claim" that the sale of a certain parcel of land to defendant Sublet, is invalid and should be annulled, as to them and orator, "because the land as sold was neither described in the petition nor embraced in the order of sale;" and of some other parcels they say that they were sold without any petition or order therefor; and "that many of the creditors * * claim that all the sales made by Gurley should be set aside—because no proceeding for the sale thereof was instituted * * * *after the decree of insolvency*," and because he was not authorized to sell them by an order made after the decree of insolvency, and was not appointed or qualified as administrator of the insolvent estate.

The bill further alleges that the sureties of Gurley deny their liability for sales made by him after the estate was declared insolvent; and that said Gurley now proposes, in his account as filed, to charge himself with the moneys received from certain purchasers of the lands; while the creditors, on the other hand, contend that in his final settlement the court should not charge him therewith, because they say that for the reasons stated, the sales were null and void and the lands still belong to the estate, and that he and the purchasers are chargeable with rents for the use and occupation of the same.

It is further alleged, that the first administrators have filed their account, of which a copy is made an exhibit, wherein they charge themselves with no assets and claim to be creditors for expenses of their administration, and fees for their services as their own attorneys, in respect of which account nothing has been done by the Probate Court; that Gurley filed a bill against one of the purchasers of land, Isabella M.

Bradley and her husband Joseph C. Bradley, "for the alleged purpose" of enforcing the vendor's lien for balance of purchase money due, and in January, 1877, obtained a decree, which is copied into the bill, for a sale of the land to pay a sum of $680 11-100 as that balance; that in March, 1876, said Isabella and her husband conveyed said lands, (for which she had bid $5,960,) to pay debts, to certain persons, her creditors, by a deed absolute on its face, but which plaintiff, on information and belief, alleges was intended to be and is a mortgage to such persons, who, to a number between fifteen and twenty, are made defendants to this bill; and that said Isabella claims to be owner of the lands so conveyed, subject to the incumbrance created by said deed.

Whereupon plaintiff says he "is embarrassed by grave doubts as to the proper discharge of his duties as administrator of said insolvent estate, and is advised that he can not, without the instruction and direction of the court in the conduct of his administration, avoid the hazard of serious personal responsibility;" that he is especially in doubt as to his duty touching the settlement of Gurley's administration accounts, involving the discharge of his sureties for his acts since the decree of insolvency, "if performed without authority of law, and involving multiplicity of suits," if plaintiff should elect to treat his acts as void—and the danger of being barred by the statute of limitations, if he should elect to test the validity of said sales and the responsibility of the sureties, by one or more actions at law. "And among the questions of doubt and difficulty (plaintiff says further) is that concerning what he should do in reference to Gurley's suit and decree against Isabella Bradley for the purchase-money of the lands sold to her."

Moreover, no assets have come into plaintiff's hands to pay expenses of litigation, and if the sales of the lands are to be treated as valid, he will not receive any assets except what may, perchance, be recovered from said Gurley and his sureties.

Wherefore, plaintiff prays that the Chancery Court will "take jurisdiction of the whole administration of the estate," and in all things direct and instruct him therein, and require the creditors to bring in their accounts and submit them to its jurisdiction, and to abide by and conform to its orders, and that it will determine whether the sales by Gurley are valid and binding on the estate, and if so only in part, which of them are so; and that as to such of the lands as were not validly sold, the court will by its decree remove the cloud upon the titles thereto occasioned by such sales, and render a decree against said Gurley and his sureties, and the pur-

chasers of such lands, for rent for the use and occupation thereof, and bring Gurley to a final settlement of his administration in said Chancery Court, and render personal decrees against him and his sureties; and that the first administrators be required to settle their administration in said Court of Chancery, and that the purchasers of the lands not validly sold be compelled to deliver possession thereof to plaintiff, and that on such lands as were validly sold, the court decree a vendor's lien to plaintiff and decree a sale of the lands to pay the purchase-money, &c.

This is a very brief abstract of a very voluminous bill. Many grounds of demurrer are assigned by a number of the defendants, objecting especially that it is multifarious and contains no equity. The Chancellor sustained the demurrers; and plaintiff, declining to amend or modify the bill, prayed an appeal to this court.

HUMES & GORDON, for appellant.

D. P. LEWIS, contra.

MANNING, J.—The bill in this cause is founded on a misconception of the cases and circumstances in which a person occupying a fiduciary position is entitled to instructions and direction from a Court of Chancery in the performance of doubtful or not well defined duties. The extent and limits of its jurisdiction for this purpose, do not indeed seem to be clearly fixed. But it can not embrace a congeries of cases like this. More than sixty individuals, standing in various, and many of them in very different relations toward the estate of decedent, Vincent, are sought by a second administrator de bonis non thereof, to be made defendants to this bill of complaint; and the separate matters it refers to are sufficient for, perhaps, a half dozen or more independent suits, in no one of which would more than a few of the persons thus brought together have any interest.

A court of equity does not take the place of counsel to act as general legal adviser to an administrator, in regard to the validity of claims, or the bringing or not bringing of suits, against the various persons who in separate transactions with the deceased in his life time, or with administrators of his estate afterwards, may be supposed to have come under liability to a subsequent administrator de bonis non thereof. Nor do we know of any authority or principle which would permit the administrator, by a recital of such distinct matters in one bill, and by averments, if made in due form, thereupon, to assemble together the numerous individuals,

who might be separately concerned therein, some in one transaction and some in another, as co-defendants, whether with or without the creditors of the estate, to controvert jointly in that single cause, the claims and charges, and to hear and obey the several and different decrees to be made against them or any of them therein. This bill requires an answer to every paragraph in it, from each of the defendants, and prays for such various decrees; and it is only by means of them that the conclusive judicial instructions and direction sought could be given. Yet very clearly, those who are the proper defendants to a suit of which a single independent transaction is the whole subject, have the right to insist that the litigation concerning it shall not be complicated in the same cause, with that concerning some other distinct ground of controversy in which they are not, and other persons only are interested.

What have the first administrators of this estate, whose account for a final settlement has been filed in the Court of Probate, to do with sales of the lands of the estate which a subsequent administrator *de bonis non*, made, or undertook to make, to third persons? Why should the settlement of that account, to which no objections have been filed, and the discharge of those administrators, be hindered by being involved in a suit against others, which, if maintainable, could not probably be determined in several years? The Chancery Courts are in session in each district, only during two short terms a year. Why should a contention between the plaintiff and the purchaser of one parcel of land, in regard to a vendor's lien thereon for a residue of the purchase money, be joined with and delayed by a dispute with the purchaser of another parcel, who had paid for the same and with his vendees, in regard to the validity of his or their purchase? All such complications are clearly in violation of the rules which prohibit misjoinders of parties and of causes of action, and are intended to prevent what is called multifariousness.

It is true that a case may often seem multifarious, when it is only complex; and it is not always easy to discern the line by which the latter is to be distinguished from the former. Counsel for appellant refer to *Allen et al. v. Montgomery R. R Co.* (11 Ala. 437), as an authority for the present bill. In that case, judgment creditors of the railroad company were sueing to obtain payment of their judgments by proceedings against its stockholders, for their unpaid shares of stock, and against its vendee for the proceeds of property alleged to have been fraudulently conveyed by the company to him. There the right of plaintiffs against the stockhold-

ers and alleged fraudulent vendee, could be traced and asserted only through the supposed fraudulent judgment-debtor, the company, and their connection and dealing with it. The common *nexus* was through this judgment debtor, itself a defendant with whom the other defendants were supposed to be collusively confederated. They were proceeded against only to subject assets of this debtor, alleged to be in their hands, to the payment of its just debts. As to the defendants other than the company, the proceedings were somewhat in the nature of a garnishment upon a judgment, whereon branch suits may be engrafted against those indebted to or having effects of an insolvent judgment debtor. Even in a court of law, by such process upon a judgment therein, "any number of persons, whether they hold property, or are indebted jointly or severally to the debtor," may be brought in to answer severally, in respect of their liability to him, to his judgment creditor.—*Curry v. Woodward*, 50 Ala. 258.

The present case is quite a different one. Plaintiff's complaint is based upon supposed separate and distinct liabilities of others directly to himself. True, he stands in the representative character of an administrator. But as such, and against them, he is clothed with all the legal and equitable title that the intestate, if living, could have had in the property and choses in action of the estate, and upon that title may sue at law, or in equity, as independently of creditors, distributees or other beneficiaries, as if he were absolute owner.

The cases in which a trustee, executor or administrator has usually invoked and received the instructions and direction of a court of equity, are those in which it has become important, in order to avoid responsibility, to have a deed or will, or other writing of doubtful meaning or effect, construed; or where disputes or doubts have arisen in respect to the shares of an estate or fund ready to be distributed, to which the beneficiaries, whether legatees, distributees or creditors, were respectively entitled. In such cases, those who are interested in the instrument to be construed, or claim portions of the fund or estate to be divided, are sometimes brought into a court of equity, to prevent a race of diligence at law, and being heard upon questions arising between themselves, the Chancellor decides them, and gives directions and pronounces judgment accordingly. But it is not in any such *quasi* consultative proceeding that questions of right are decided, between those who, claiming title, refuse to give up property upon an administrator's adverse demand of the same, or in which a liability to him of a third person,

[Clay, Adm'r, v. Gurley, Adm'r, et al.]

in no way interested in the distribution of the estate, is asserted on one side and denied on the other. Such antagonism makes necessary a contestation at law or in equity, between them and them only. And the suit in which it is waged must be conducted in the ordinary manner, with averments in the pleadings that properly present the issues to be determined. Several of the matters mentioned in the present bill, are of a nature requiring this direct litigation *inter partes*, if plaintiff shall find and be advised, after due investigation, that he ought to contend for them. And his need of advice can not constitute a reason why those against whom he may have, or may suppose he has just claims, shall be denied the right of having them tried according to the rules of law.— *Weakley v. Hammond*, (last term).

Courts of equity have also sometimes interposed to restrain the creditors or legatees of an estate from prosecuting suits against the administrator, and to require them to bring their claims into such courts for settlement there, when the assets could not readily be got in, and it was uncertain whether he could safely omit to plead that he had fully administered, or *plene administravit præter*, a sum required to pay preferred debts.—*Jeter v. Barnard & Co.*, 42 Geo. 43 ; *Irvin v. Creditors of Bond*, 41 Geo. 630. See, also, *Buccle v. Atleo*, 2 Vern. 37 ; *Rush v. Higgs*, 4 Vesey, 638, and Sumner's note ; 1 Story's Eq. Jur. § 544; *Lee v. Park*, 1 Keene, 715.

But this is not the object of the bill in this cause ; nor is any occasion shown for a bill to restrain creditors. Indeed, it can rarely now be necessary in this State to file one for such a purpose. By our statute law, provision is made for declaring the estate of a deceased person insolvent, when it is reported and shown to be so, in the Probate Court, and for requiring the creditors to file their claims and come to a settlement with the administrator and one another there. And though, to determine the question of liability or not of the estate or the amount of its liability, suits be prosecuted against the administrator in other courts, the law requires that if judgments be rendered therein against him, they shall nevertheless be certified without execution, to the Probate Court for their due proportions of the assets, when the estate has been declared insolvent. These enactments greatly facilitate settlements, and render it generally unnecessary, when trusts proper or some other matter of exclusive equity jurisdiction are not involved, to subject an estate to the expensive and dilatory administration of a court of equity. And this an administrator is not permitted to do in this State without showing such special circumstances as shall justify

[Clay, Adm'r, v. Gurley, Adm'r, et al.]

the interposition of that court.—*McNeil's Ex'r v. McNeil's Distributees*, 36 Ala. 109.

In our opinion the bill in this cause does not present a case of that kind.

There is one question concerning property rights, that has been discussed in this cause upon which we ought probably, in order to avoid future litigation, to express our judgment. It arises thus : Gurley, administrator *de bonis non*, reported the estate of his intestate, Vincent, insolvent, and it was so declared to be by the Probate Court. But no appointment of a successor to him was made by that court, either upon a nomination of the creditors of the estate, or otherwise ; nor was Gurley reappointed to be administrator of the estate as an insolvent estate; nor did he execute any new bond for the office. And it is alleged that doubts exist whether the sureties upon the bond he gave, are liable for any acts or defaults of his, after the estate was declared insolvent, and whether his right to the office was not thereby absolutely determined, and his subsequent acts of administration void.

We think there is no reason for such doubts. The statute enacts that the Probate Court shall require the administrator of an estate, when it is declared insolvent, within sixty days therefrom, to appear and make a settlement of his accounts."—Code 1876, § 2559 (2187); and that then, or on some other day to which the settlement may be continued, the creditors "may nominate any fit person  *  *  *  as administrator of the property, and of the rights and credits thereof unadministered," (§ 2561); which person shall be appointed by the court—(§ 2564). But if the creditors do not attend, "or if from any other cause, no appointment of such administrator is made, the court may, in its discretion, continue the former executor or administrator," &c. (§ 2566); and "whenever any administrator is *appointed* under the provisions of this law," any former grant of letters on the estate is *thereby* revoked," &c.—(§ 2567.)

These provisions ought, of course, to be observed by the Probate Courts; but they are only directory. Until revoked as thereby provided, the letters of administration continue in force, and the authority and powers they confer may be exercised. The sales of land made by Gurley after the declaration of insolvency, under an order of the Probate Court made before, and those he made afterwards upon petitions and orders of sale which were also made after that time, when reported to the court and confirmed by it, are not invalid because the administrator who made them was not re-appointed after the declaration of insolvency.

The idea is fallacious, that by a bill like the one before

[Wolffe v. Nall, et al.]

us, the various controversies with third persons, in which the estate of a decedent may be concerned, can be conducted and concluded more expeditiously and cheaply than by several separate suits. The costs of a chancery cause are largely proportionate to the number of the defendants. Each of these, unlike plaintiffs, must be served with process and notices, and may be entitled to a copy of the bill; and when the bill is made very voluminous by the incorporation in it of various matters and recitals that in no way concern most of the defendants, the expense of the copies is enormously and unnecessarily increased. Moreover, a suit like this, if maintainable, being commenced as one, must be continued as one to the conclusion. It can not be split up into several parts, some of which may be in an appellate court, while others may remain in the Court of Chancery.—*Moore v. Randolph*, 52 Ala. 530. Consequently it will often happen, also, that the entire cause must be continued and delayed, perhaps term after term, because of the failure to get necessary evidence concerning—or of the death of a defendant concerned in—one of the subjects of controversy, while in respect of others every thing and every body may be ready for the decree of the court. Greatly increased delay and expense would be the usual, often the inevitable, consequences of so combining different causes of action in one suit.

Let the decree of the Chancellor sustaining the demurrers be affirmed.