# McLeod *et al. v.* McLeod.

## *Bill in Equity to cancel a Conveyance.*

1. *Bill in equity to set aside conveyance on account of undue influence; necessary allegations.*—In a bill filed seeking to have set aside and cancelled a conveyance of a contract upon the ground that its execution was obtained by undue influence, it is not necessary to allege with particularity the manner in which the execution of the conveyance or contract was accomplished, but only that it was procured by undue influence exerted by certain named parties.

2. *Same; not necessary that complainant offer to rescind the contract or conveyance before filing the bill.*—On a bill filed seeking to have set aside and cancelled a conveyance or a contract upon the ground that its execution was obtained by undue influence, it is not necessary for the maintenance of the bill that it should aver that complainant offered to rescind the contract or conveyance before the filing of the bill, it being sufficient if in the bill the complainant offers to return whatever he has received under the conveyance or contract, and otherwise to do equity.

APPEAL from the Chancery Court of Barbour. Heard before the Hon. W. L. PARKS.

The bill in this case was filed by the appellee, William McLeod, against the appellants, Sallie E. McLeod, indivdually, and as administratrix of the esetate of James C. McLeod, deceased, and against the other children of the complainant. It was averred in the bill that William McLeod was the father of James C. McLeod, deceased, and also of the defendants; that James C. McLeod was murdered on the public highway and left an estate of considerable value; that being the father of James C. McLeod, the complainant was entitled as heir to one-half of his said estate, and was entitled to become the administrator thereof; that the complainant was 77 years old and of weak mind; that

there was a streak of insanity in his family, several members of his family having died insane, and he had become mentally weak by reason of continued sickness. That the respondents had been estranged from the complainant prior to the death of James C. McLeod on account of the second marriage of the complainant, and this estrangement amounted to a total separation by the respondents from the complainant; that immediately following the death of said James C. McLeod, Sallie E. McLeod and his two other daughters who were respondents to the bill, pretended that they desired a reconciliation and asked to be restored to their places in the affections of the complainant, and made many overtures and demonstration of love for the complainant; that at this time the complainant's mind was impaired and weak by reason of the great excitement attending the sudden and tragic death of his son, Jas. C. McLeod; that by reason of the great mental weakness of the complainant and by reason of undue influence exerted by the respondents as aforesaid, they induced the complainant to execute and deliver to the said Sallie E. McLeod a paper in writing, whereby he sold and relinquished his entire interest in the estate of his son and relinquished his right to administer on said estate for a consideration of three hundred dollars. That the value of the estate of James C. McLeod, deceased, was $20,000, and by reason of the undue influence exerted upon the complainant while in a weak mental condition, he, in executing said writing, conveyed his interest valued at $10,000, to the respondent Sallie E. McLeod for the sum of $300.

The complainant in his bill offered to pay to said Sallie E. McLeod the $300 which had been paid for the execution of said instrument with interest thereon, or to pay such amount to any other person entitled thereto, or to pay the same into court, and submitted himself to the jurisdiction of the court in this regard.

The prayer of the bill was that said paper writing by which he relinquished his interest in the estate of James McLeod, deceased, be ordered delivered up and

[McLeod *et al.* v. McLeod.]

declared null and void, and that the same be cancelled. The respondents demurred to the bill upon several grounds, the substance of which is sufficiently shown in the opinion.

On the submission of the cause upon the demurrers, the chancellor ordered a decree overruling them. From this decree the respondents appeal and assign the rendition thereof as error.

G. L. COMER, for appellants.—The averments of the bill as to the undue influence used by appellants or some of them in getting appellee to sign said paper writing were not specific and definite as the law requires. *Bailey v. Litten,* 52 Ala. 284.

As to the sufficiency of the allegations of fraud and undue influence the following decisions are relied on. *Bailey v. Litten,* 52 Ala. 282-284; *Jackson v. Rowell,* 87 Ala. 685; Story's Equity, § 694.

As to time when notice must be given that party intends to rescind a contract, and as to paying back money received by such party and placing the other party *in statu quo,* see following authorities.—*Miller v. Louisville & Nashville Railroad Co.,* 83 Ala. 274; *Wilcox v. San Jose Fruit Packing Co.,* 113 Ala. 519; *Jones v. Anderson,* 82 Ala. 302; *Samples v. Guyer,* 120 Ala. 611.

A. H. MERRILL, *contra.*—The allegations of the bill are sufficient to entitle complainant to the relief sought. *Burke v. Taylor,* 92 Ala. 530; *Kyle v. Perdue,* 95 Ala. 579; *Waddell v. Lanier,* 62 Ala. 347; *Cofer v. Moore,* 87 Ala. 705; *Lester v. Mahan,* 25 Ala. 445; Digest of Southern Reporter, 794.

The offer in the bill to do equity before asking the relief is full and complete and is sufficient without averring an offer to respond prior to the filing of the bill.—*Thomas v. Jones,* 84 Ala. 302; *McGuire v. Van Pelt,* 55 Ala. 344; *N. E. M. Sec. Co. v. Powell,* 97 Ala. 483; *Grider v. Mortgage Co.,* 99 Ala. 281; *Hartley v. Mathews,* 96 Ala. 224; *Rogers v. Torbut,* 58 Ala. 523; *Allgood v. Bank,* 115 Ala. 418; *Giddens v. Bolling,* 99 Ala. 319.

[McLeod *et al.* v. McLeod.]

TYSON, J.—The grounds of demurrer taken to the bill, insisted upon in argument, may be stated to be these: 1st, the averments as to undue influence are not sufficiently specific and definite; and 2d, it contains no allegation that complainant ever offered to rescind the contract before the filing of the bill. To see that the first insistence cannot be sustained, we have only to apply what was said in *Letohatchie Baptist Church v. Bullock*, 133 Ala. 552: "We have never understood it to be necessary to allege with particularity the *quo modo* the result complained of was accomplished, but only that it was accomplished by undue influence exerted by. named persons. The inquiry is not whether the improper influence was sufficient to have coerced the will of a man of ordinary capacity and force of character, but only whether the influence whatever it may have been did in point of fact control the act in question—not whether it should have had the effect charged, but whether it *did* have that effect; and any influence which coerces an act in which the judgment and will of the actor do not occur, is undue influence. Hence it is that the averment should be rather of the result than of the particular and special acts and modes of causation."

It is undoubtedy true that the party defrauded must disaffirm the transaction at the earliest practical moment after a discovery of the fraud and that he must return or offer to return whatever he has received from the other party. But we do not understand that he may make the offer to return in his bill, as is done here. His failure to do so prior to its filing cannot effect its equity, and is only material as affecting the question of costs.—*Thomas v. Jones*, 84 Ala. 302.

The decree overruling the demurrer must be affirmed.