(85 South. 768)

### BIRMINGHAM TRUST & SAVINGS CO. et al. v. CANNON. (6 Div. 21.)

(Supreme Court of Alabama. June 3, 1920.)

**1. Husband and wife ⊚⟹35—Bill held to aver assignment of stock as between parties to antenuptial contract.**

A bill, averring in effect that an antenuptial contract was evidenced by a written instrument delivered to complainant, which said instrument in substance transferred to complainant the shares of the capital stock of a railway which were then owned by him, etc., held to sufficiently aver an assignment or transfer of the stock, as between the parties, and at least gave the complainant such a right or claim thereto as could be enforced in a court of equity.

**2. Corporations ⊚⟹129—Registration of assignments of stock unnecessary as between parties.**

Code 1907, § 3471, requiring the registration of transfers of stock on the books of a corporation, was intended only for the protection of judgment creditors, or subsequent purchasers without notice, and does not invalidate other methods of assignments, transfers, or liens, as between the parties.

**3. Equity ⊚⟹273—Amendment held not forbidden departure.**

Amendment of a bill, averring a mere parol gift of corporate stock to a prospective bride so as to show that the antenuptial contract was evidenced by a written instrument signed by de-

fendant and delivered to complainant, which, in substance, transferred the shares of stock, *held* not a forbidden departure, under Code 1907, § 3095.

**4. Equity ⌐148(3)—Amended bill, seeking inconsistent relief, not multifarious.**

An amended bill *held* not multifarious because it sought inconsistent relief, under Code 1907, § 3095.

**5. Trusts ⌐371(1)—Bill held to sufficiently charge undue influence inducing signing of antenuptial agreement.**

In an action to have a trust declared in corporate stock transferred in an antenuptial agreement to the complainant, bill *held* to sufficiently charge undue influence upon the part of the husband in causing or inducing the complainant to sign a postnuptial agreement.

**6. Cancellation of instruments ⌐37(7)—Bill need not set up quo modo or facts constituting undue influence.**

It is not necessary for a bill, alleging undue influence inducing complainant to sign an agreement, to set up the quo modo of the facts constituting undue influence.

**7. Trusts ⌐178—Court will not construe unambiguous trust agreement.**

Although a court of equity has jurisdiction for the enforcement of all trusts, and can generally be called upon by an interested party to construe or interpret instruments creating or regulating the same, the instrument should be ambiguous or susceptible of a double meaning or construction; and, where there is no bona fide doubt as to the true meaning and intent of the provision of an instrument creating the trust, or as to the particular course that the trustee should pursue, there is no need for equitable interference.

**8. Trusts ⌐178—Bill held not to require construction of trust agreement.**

A bill, seeking to have a trust declared in corporate stock transferred in an antenuptial agreement, *held* not to charge any action or inaction on the part of trustees in violation of terms of postnuptial agreements, or agreements presenting ambiguous or double meaning which would require construction by a court of equity.

**9. Equity ⌐232—Defect in part of bill not ground for demurrer to entire bill.**

If a bill contains equity, though subject to specific grounds of demurrer, the defect cannot be questioned by a demurrer addressed to the bill in its entirety.

Appeal from Circuit Court, Jefferson County; Horace C. Wilkinson, Judge.

Bill by Rose Johns Cannon against the Birmingham Trust & Savings Company and A. W. Smith, to annul two trust agreements. From a decree overruling the demurrers of respondents to the bill as amended, respondents appeal. Affirmed.

The amendments to the bill are as follows:

Rose Johns Cannon, a resident of Jefferson county, Alabama, exhibits this her bill of complaint against the Birmingham Trust & Savings Company, a corporation and Arthur W. Smith, a resident of Jefferson county, Alabama, and as a basis for the relief hereinafter prayed states the following facts:

First. Complainant and respondent Arthur W. Smith are each over twenty-one years of age, and residents of Jefferson county, Alabama. Respondent Birmingham Trust & Savings Company is a corporation organized under the laws of the state of Alabama, having its principal place of business at Birmingham, Jefferson county, Alabama. On and since July 4, 1908, the said Arthur W. Smith has been the president and chief administrative officer of respondent Birmingham Trust & Savings Company, and a large stockholder thereof. On and since July 4, 1908, Lee C. Bradley has been a director of respondent Birmingham Trust & Savings Company, and a large stockholder thereof.

Second. On, to wit, the 5th day of August, 1903, L. W. Johns and complainant were married at Bessemer, Alabama, and their marital status continued until the death of the said L. W. Johns; complainant and said L. W. Johns, living during said period in or near Birmingham, Alabama. The said L. W. Johns died on, to wit, the 4th day of February, 1912, and shortly after his death complainant was appointed administratrix of his estate by the probate court of Jefferson county, Ala., and she is still such administratrix.

Third. Just prior to or at the time of complainant's marriage to the said L. W. Johns, she and the said L. W. Johns entered into an antenuptial contract, by the terms of which complainant agreed to marry the said L. W. Johns, and he made an antenuptial gift to complainant of the shares of the capital stock of the Birmingham Railway, Light & Power Company, both common and preferred, which were then owned by him, and in pursuance of said agreement, complainant married the said L. W. Johns.

Amendment of April 9, 1918: "And complainant avers that said antenuptial contract was evidenced by a written instrument at that time, signed by said L. W. Johns and delivered to complainant, which instrument, in substance, transferred to complainant, in consideration of love and affection, and her marriage to him, the shares of the capital stock of the Birmingham Railway, Light & Power Company, both common and preferred, which were then owned by him, and also other property not involved in this suit."

Subsequent to the marriage of complainant with the said L. W. Johns, the said shares of the capital stock of the Birmingham Railway, Light & Power Company, the subject-matter of said antenuptial contract, owing to a consolidation of said Birmingham Railway, Light & Power Company with the American Cities Railway & Light Company, came to be represented by certain shares of the capital stock of said last-named corporation, evidenced by certificates numbered 1235 for eighty (80) shares, and 1064 for one hundred (100) shares of the common stock of said corporation, and by certificates numbered 2063 for eighty-eight (88) shares, and 594 for one hundred (100) shares of the preferred stock of said corpora-

tion, and each of such certificates were without the knowledge or consent of complainant caused to stand on the stock books of said corporation in the name of Wallace Johns, who was an adult son of said L. W. Johns by a former wife. Shortly after July 4, 1908, respondent Birmingham Trust & Savings Company, acting under color of a written instrument signed on July 4, 1908, by complainant, the said L. W. Johns and respondent Birmingham Trust & Savings Company, a copy of which instrument is attached hereto, marked "Exhibit 1," and made a part hereof, procured to be reissued to it, in lieu of and as representing the capital stock, both common and preferred above described, Certificate No. G-2073, for ninety-four (94) shares of the preferred capital stock of said American Cities Railway & Light Company, certificate No. G-2074 for ninety-four (94) shares of the preferred capital stock of said company, certificate No. E-1247 for ninety (90) shares of the common capital stock of said company, and certificate No. E-1248, for ninety (90) shares of the common capital stock of said company. All of said shares were held by said respondent Birmingham Trust & Savings Company under color of said written instrument copied as Exhibit 1 to this bill, until, to wit, September, 1911, at or about which time, owing to a dissolution of the said American Cities Railway & Light Company as a body corporate, and the conversion of its assets into cash, and the distribution of same by said company among its stockholders according to their several interests, the said respondent Birmingham Trust & Savings Company received in lieu of all the said shares the sum of thirty-two thousand three hundred and fifty-seven ·and $60/100$ dollars ($32,357.60) as follows: Ninety-four hundred ($9,400.00) dollars for certificate No. G-2073; ninety-four hundred ($9,400.00) dollars for certificate No. G-2074; sixty-seven hundred seventy-eight and $80/100$ ($6,778.80) dollars for certificate No. E-1247; and sixty-seven hundred seventy-eight and $80/100$ ($6,778.80) dollars for certificate No. E-1248.

The respondent Birmingham Trust & Savings Company held said sum of $32,357.60, under color of said instrument copied as Exhibit 1, to this bill, until, to wit, December 22, 1911, on which date complainant, her said husband, L. W. Johns, respondent, Arthur W. Smith, and respondent Birmingham Trust & Savings Company signed another instrument in writing, a copy of which is hereto attached, marked "Exhibit 2," ·and made a part of this bill. Shortly after the signing of said last-named instrument in writing, and acting under color of same, respondent Birmingham Trust & Savings Company transferred said $32,357.60 to respondent Arthur W. Smith, which said respondent held said fund or its equivalent in bonds, mortgages, or other securities into which he had converted same, taking title in his own name under color of said last-mentioned instrument in writing, until the death of complainant's said husband, L. W. Johns, but complainant is not advised what portion of said fund was held by said Arthur W. Smith in cash, or what portion was held by him in the form of bonds, mortgages, or other securities into which he had converted same, and title to which he had taken in his own name as aforesaid. Complainant is informed and believes and upon such information and belief avers the facts to be: That after the death of complainant's said husband, L. W. Johns, respondent Arthur W. Smith transferred and delivered to respondent Birmingham Trust & Savings Company a portion of said fund and some of said securities so held by him at the death of complainant's said husband, ,and himself retained a portion of same, but what amount of said fund and which of said securities he so transferred and delivered and what amounts and which of same he retained complainant does not know; that since the death of complainant's said husband the respondent Birmingham Trust & Savings Company has loaned, invested. and reinvested a portion or all of said fund and securities so delivered to it, taking title to such investments and reinvestments in its own name and collecting interest thereon, but the extent and exact nature of such investments and reinvestments and the amount of such interest is unknown to complainant; that since the death of complainant's said husband, L. W. Johns, respondent Arthur W. Smith has loaned, invested, and reinvested a portion or all of said· fund and securities so retained by him, taking title to such investments in his own name and collecting interest thereon, but the extent and exact nature of such investments and reinvestments and the amount of such interest is unknown to complainant; that the respondent Arthur W. Smith, and Birmingham Trust & Savings Company now either jointly or severally hold the said fund or the proceeds thereof in cash or securities, or both, and withhold the same from complainant; that respondents have loaned, invested, and· reinvested said fund and said securities as aforesaid, and taken title to said investments and reinvestments, and made collections of said interest, and now withhold from complainant the proceeds under color of the written instrument copied as Exhibit 2 to this bill. And complainant avers that before bringing this suit she made demand on the said respondents separately and severally for said money and said securities, the proceeds of said fund, and each of them refused to deliver the same to her or to account to her for same.

Amendment of April 9, 1918:

"Fourth. Complainant avers that the written instrument dated July 4, 1908, a copy of which is attached as Exhibit 1 to this bill, is invalid and not binding on her, for the reason that she was induced to sign it through and by the exercise upon her to that end of undue influence by her said husband, L. W. Johns. Complainant further avers that the written instrument dated December 22, 1911, a copy of which is attached as Exhibit 2 to this bill, is invalid and not binding upon her, for the reason that she was induced to sign it through and by the exercise upon her to that end of undue influence by her said husband, L. W. Johns."

Amendment of August 7, 1919:

"Fifth. Oratrix further avers that whether or not she is entitled to said property held by defendants, Arthur W. Smith and the Birmingham Trust & Savings Company, as having been an antenuptial gift from her deceased husband, L. W. Johns, and whether or not

said written instrument, a copy of which is marked 'Exhibit 1' of this bill, be valid or invalid, and whether or not said written instrument marked 'Exhibit 2' of this bill be valid or invalid, in any of said events, said defendants Arthur W. Smith and the Birmingham Trust & Savings Company are trustees, for the use and benefit of oratrix of property held by them as aforesaid, or a part thereof, and oratrix avers that each of said last-named defendants claim and hold said property as trustees under said written instrument marked 'Exhibit 2' of this bill. Oratrix further avers that said last-named defendants claim that under and by the terms of said written instrument marked 'Exhibit 2' oratrix is entitled only to receive the net proceeds, during her natural life, of the income of that part of said fund held by defendant Arthur W. Smith, as trustee, to-wit, one-half of the total sum realized by defendant Birmingham Trust & Savings Company as the proceeds of said stock, and that she is entitled to receive nothing of the principal or income of the other one-half of said fund, viz. that part held by the Birmingham Trust & Savings Company as trustee. Oratrix further avers that said interpretation is incorrect, wrong, and unjust, and that, this bill having been filed for the purpose of determining the nature and extent of said trust, and whether the same is in invitum, or whether it be created by written instrument marked 'Exhibit 1,' or by written instrument marked 'Exhibit 2'; that is to say, whether or not oratrix is mistaken in her averments that said fund belongs to her absolutely and is an antenuptial gift, or whether she has the rights which by its terms are purported to be conferred upon her by Exhibit No. 1, or by Exhibit No. 2. Oratrix calls upon the court to determine, first, whether she is the owner of said fund in the hands of both of said trustees, and, if not, then, whether she is the owner of whatever rights are purported to be conferred upon her by written instrument Exhibit No. 1, or by written instrument Exhibit No. 2, and if this court determines that she is entitled to such rights as are purported to be conferred upon her under either of said instruments, then to interpret said instrument as to what her rights thereunder are and to· enforce same."

To the end therefore that the said Birmingham Trust & Savings Company, a corporation, and the said Arthur W. Smith, and the administrator ad litem of the estate of L. W. Johns, deceased, when appointed by this court, may show cause, if they can, why your oratrix should not have the relief hereby prayed, she prays that the said Birmingham Trust & Savings Company, the said Arthur W. Smith, and the said administrator ad litem of the estate of L. W. Johns, deceased, when appointed, be by proper process of this court each made parties defendant to this bill of complaint, and that they each be required under the rules of this court and within the time required by law and the rules of this honorable court to plead, answer, or demur to this bill of complaint, and that they each be required to make answer hereto as by note hereto attached they are required to do.

And oratrix further prays that upon a final hearing of this cause this court will order, adjudge, and decree that the written instrument, a copy of which is attached hereto and marked 'Exhibit 1,' be canceled, annulled, and held for naught, and that the written instrument, a copy of which is attached hereto and marked 'Exhibit 2,' be canceled, annulled, and held for naught. And oratrix further prays that the said fund described and referred to in paragraph 3 of this bill of complaint be decreed to be the proceeds of the said antenuptial gift to oratrix from her said husband, L. W. Johns, and to be the property of oratrix. And oratrix further avers that a money decree be rendered in her favor against each of the said defendants for whatever amount the evidence may show such defendant holds of the said fund, and that a decree be entered, divesting out of the said Birmingham Trust & Savings Company the title to such securities as the evidence may show has been received by it as the proceeds of said fund or any part thereof, and investing the title to the same in complainant, and that a decree be entered, divesting out of defendant Arthur W. Smith the title to such securities as the evidence may show has been received by him as the proceeds of said fund or any part thereof, and investing the title thereto in complainant. And oratrix further prays for an accounting in this court by the respondents, and each of them, and that whatever sum of money is due to her from the respondents, and each of them, as the proceeds of said fund or any part thereof with interest therein shall be decreed by the court in favor of oratrix and against respondents. And oratrix further prays that such securities as may be in the hands of the respondents or either of them as the proceeds of said fund shall be decreed to be the property of oratrix, and that said respondents be required to deliver the same to her by decree of this court. And oratrix further prays that respondents, and each of them, be required to account to her for interest on said fund for the time during which the said respondents have had possession of same.

Oratrix further prays that if it be found necessary under the facts alleged in this bill of complaint, this court will appoint an administrator ad litem of the estate of L. W. Johns, deceased, and that such administrator when appointed be made a party respondent to this proceeding, and to that end that all necessary orders and decrees as may be necessary for such action be made and entered by the court as if specially prayed for in this bill of complaint.

And if oratrix is in any wise mistaken as to the relief specially prayed for, she further prays for such other, further, or different relief as in the premises and under the evidence to be hereafter adduced she may be entitled to, and as may seem to the court meet and proper, and oratrix will ever as in duty bound pray, etc.

Amendment of August 7, 1919: "Oratrix further prays that if she is mistaken in her allegations that she is entitled to said fund as the proceeds on an antenuptial gift from her said deceased husband, and if this court determines that whatever rights oratrix has or had under either of said written instruments, then this court will interpret said instrument under which her rights are, and make such orders and decrees as may be necessary to enforce her said rights."

### Agreement of July 4, 1908.

This agreement was entered into by L. W. Johns, as party of the first part, Rose Johns, who, having remarried since the death of L. W. Johns, is now Rose Johns Cannon, as party of the second part. It recites that L. W. Johns entered into an antenuptial contract, whereby L. W. Johns made an antenuptial gift to Rose Johns of certain shares of the capital stock of the Birmingham Railway, Light & Power Company; that these shares were then represented by certain shares of the capital stock of the American Cities Railway & Light Company; that the stock representing the antenuptial gift were never transferred by L. W. Johns to Rose Johns, and that they were "mutually desirous of modifying the terms of the said antenuptial agreement as hereinafter expressed." This agreement provides that, upon acceptance by Rose Johns, its provisions should be in lieu of dower and alimony.

The said shares of stock in the American Cities Railway & Light Company were, by the terms of said agreement, assigned to the said Rose Johns, in lieu of said antenuptial gift, "to be held in trust for her by the Birmingham Trust & Savings Company, as trustee, for the uses and upon the trusts herein provided," the said L. W. Johns agreeing to cause these shares of stock to be duly transferred to the Birmingham Trust & Savings Company, and the transfer properly entered on the books of the American Cities Railway & Light Company, and new certificates to be issued to the trustee, all of which was afterwards done.

The trusts and uses upon which said stock was to be held by the trustee are briefly as follows:

(a) To hold the legal title to one-half of said stock during the life of Rose Johns, and for her benefit during that time; and to hold the legal title to the other one-half for the use and benefit of Rose Johns in fee simple, each interest being a several and not an undivided interest; to transfer, incumber and dispose of the life estate one-half, with the consent of L. W. Johns, Rose Johns and the trustee, for reinvestment or for necessary maintenance of Rose Johns, and to transfer, incumber and dispose of the fee-simple one-half, with the consent of Rose Johns and the trustee, for like purposes.

(b) To collect and pay over to Rose Johns the dividends on said stock during her life.

(c) Upon the death of Rose Johns, to transfer the life estate one-half to L. W. Johns, if living; otherwise, to his representatives, distributees, or legatees; and to transfer the fee-simple one-half to the representatives, distributees or legatees of Rose Johns. The trust terminates upon the death of Rose Johns.

The agreement of July 4, 1908, further provides that if any monthly dividend paid to Rose Johns exceeds $100.00, she will pay the excess to L. W. Johns, and if less than $100.00, the deficiency will be paid to her by L. W. Johns, a lien upon certain described real estate being created to secure the payment of such deficiencies, if any; also that Rose Johns would contribute all dividends, except $25.00 per month, to the maintenance of the home, unless there be a separation of the parties.

The Birmingham Trust & Savings Company executed the agreement to evidence its acceptance of the trust. Arthur W. Smith was not a party to this agreement of July 4, 1908. A copy of this July agreement is attached to the bill, as amended, as "Exhibit 1."

### Agreement of December 22, 1911.

This agreement was entered into by L. W. Johns, first party, Rose Johns, second party, Birmingham Trust & Savings Company, third party, and Arthur W. Smith, fourth party.

This December agreement recites the execution of the July agreement; the issuance to the Birmingham Trust & Savings Company, as trustee, of the new certificates of the American Cities Railway & Light Company; states that the said trustee became the holder of the new certificates in trust upon the terms stated in the July agreement; states that the American Cities Railway & Light Company was dissolved and its assets converted into cash; that the Birmingham Trust & Savings Company, as said trustee, received $32,357.60 for said shares upon said dissolution; that L. W. Johns and Rose Johns desired to modify the July agreement and to substitute this December agreement therefor, and that said trustee had consented thereto. This agreement, like the July agreement, provides that its provisions should be in lieu of all claims of dower by Rose Johns, and in lieu of all alimony against L. W. Johns in the event of a separation.

L. W. Johns, Rose Johns, and the Birmingham Trust & Savings Company, as said trustee, transferred and assigned to Arthur W. Smith, as trustee, the said sum of $32,357.60 less $200.00, expense incurred by the Birmingham Trust & Savings Company, as trustee, under the July agreement. The trusts and uses upon which said sum were to be held by Arthur W. Smith, as trustee, are briefly, as follows:

(a) To hold the legal title to said trust fund, including property in which it may be invested during the joint lives of L. W. Johns and Rose Johns, all income to be paid to Rose Johns, during such time, she to pay to L. W. Johns any excess over $1,200.00 per year received by her, and he to pay any deficiency to her, a lien on certain described real estate being created to secure such deficiencies, if any; she to contribute all income received by her, except $240.00 per year during the joint lives, to the maintenance of the home if L. W. Johns maintains a home for her. In the event of separation L. W. Johns and Rose Johns are to receive the net income equally if, in the opinion of the trustee, A. W. Smith, the separation was without fault on the part of L. W. Johns. Upon the death of either party, A. W. Smith, as trustee, is to retain one-half of the trust fund, and pay the net income thereof to the survivor during the life of the survivor, and to transfer and assign the other one-half to Birmingham Trust & Savings Company, as trustee, for a charity. This trust, with A. W. Smith as trustee, terminates upon the deaths of both L. W. Johns and Rose Johns, and thereupon A. W. Smith, as trustee, is required to transfer and assign the one-half remaining in his hands to Birmingham Trust & Savings Company, as said trustee.

(b) The trust fund transferred by Smith, trustee, to Birmingham Trust & Savings Com-

pany, trustee, one-half upon the death of one of the parties and the other one-half upon the death of the survivor, is to be known as the "Llewellyn and Rose Johns Memorial Fund." The beneficiary of this fund is such association, organization, society or corporation, existing and maintaining an institution in Jefferson county, Alabama, "which cares for, supports, and maintains and educates, where needed, orphan children, indigent persons, and needy old people, one, any or all of them, or which cares for and supports, when needed, indigent or helpless miners, their wives or children, any one or all of them, in the state of Alabama." The trustee is required to select the beneficiary, and may change the beneficiary at the end of each year,' provided always that the beneficiary belongs to the above class. The net income is required to be paid to the beneficiary during the year for which it has been selected. The intention expressed as to this second trust, of which the Birmingham Trust & Savings Company is trustee, is to create "a perpetual charitable trust for the purposes hereinabove set out."

Tillman, Bradley & Morrow, of Birmingham, for appellants.

The attempted antenuptial agreement or gift of the shares was never consummated by delivery of the gift. 194 Ala. 469, 69 South. 934; 99 Ala. 441, 12 South. 420, 19 L. R. A. 700, 42 Am. St. Rep. 84. Under the allegations of the bill as last amended, appellee claims against each agreement and also claims under one. 72 Ala. 210; 76 Ala. 149; 77 Ala. 563; 80 Ala. 185; 87 Ala. 459, 6 South. 366; 119 Ala. 202, 24 South. 416; 31 Ala. 132; 43 Ala. 692; 152 Ala. 269, 44 South. 592; 90 Ala. 473, 7 South. 920; 188 Ala. 449, 66 South. 22; 164 Ala. 376, 50 South. 1029. Amendment adding paragraph 5 constitutes a departure. 188 Ala. 449, 66 South. 22; 164 Ala. 376, 50 South. 1029. As last amended, the bill is multifarious. Authorities supra. Appellee is not entitled to an interpretation of either agreement as prayed. 62 Ala. 14; 214 Mass. 114, 101 N. E. 62; 224 Mass. 163, 112 N. E. 641; 3 Pomeroy, § 1064; 2 Perry on Trusts, § 476a. The facts constituting undue influence are not sufficient. 202 Ala. 43, 79 South. 381; 87 Ala. 685, 6 South. 95, 4 L. R. A. 637.

Burgin & Jenkins and Harsh, Harsh & Harsh, all of Birmingham, for appellee.

A delivery of the certificate of shares is not essential to a transfer of the stock. 14 Corpus Juris, 673; 83 Ala. 351, 3 South. 369; 89 Ala. 544, 7 South. 773; 199 Ala. 659, 75 South. 310. The bill is not repugnant and inconsistent. Section 3095, Code 1907; 201 Ala. 185, 77 South. 711; 200 Ala. 260, 76 South. 26. There is no departure wrought by the amendment. Authorities ubi supra. The bill is not multifarious. Authorities ubi supra, and 170 Ala. 260, 53 South. 1012; 203 Ala. 8, 81 South. 676; 203 Ala. 6, 81 South. 674. Equity has jurisdiction to enforce the trust. 69 Ala. 575, 44 Am. Rep. 539; 159 Ala. 539, 48 South. 685. The allegation of undue influence is sufficient. 133 Ala. 548, 32 South. 58; 137 Ala. 267, 34 South. 228; 147 Ala. 352, 41 South. 657; 176 Ala. 262, 57 South. 760; 195 Ala. 471, 70 South. 148.

ANDERSON, C. J. [1, 2] When this case was heard on former appeal (194 Ala. 469, 69 South. 934) this court held that as the bill averred a mere parol gift of corporate stock by Johns to his prospective bride, and the gift was never consummated by delivery of the stock, it was inoperative. The bill, however, by amendment avers, in effect, that the antenuptial contract was evidenced by a written instrument signed by L. W. Johns and delivered to complainant, which said instrument in substance transferred to complainant the shares of the capital stock of the Birmingham Railway, Light & Power Company, both common and preferred, which were then owned by him, and also other property not involved in this suit. This is a sufficient averment of the assignment or transfer of the stock as between the parties, and at least gave the complainant such a right or claim thereto as could be enforced in a court of equity. Campbell v. Woodstock Iron Co., 83 Ala. 351, 3 South. 369; Union Bank v. Hartwell, 84 Ala. 379, 4 South. 156; Berney Bank v. Pinckard, 87 Ala. 577, 6 South. 364. Section 3471 of the Code of 1907, requiring the registration of transfers upon the books of a corporation, was intended only for the protection of judgment creditors or subsequent purchasers without notice, but does not invalidate other methods of assignments, transfers, or liens as between the parties. The case of Jones v. Weakley, 99 Ala. 441, 12 South. 420, 19 L. R. A. 700, 42 Am. St. Rep. 84, in no wise conflicts with this holding.

[3, 4] The amendment to the bill was not a forbidden departure, nor does the fact that it sought inconsistent relief render it multifarious. Section 3095 of the Code 1907; Barrington v. Barrington, 201 Ala. 185, 77 South. 711; Durr v. Hanover National Bank, 170 Ala. 260, 53 South. 1012. The authorities cited by counsel for appellant are either inapt or related to chancery pleading prior to the adoption of the section of the Code above cited.

[5, 6] Paragraph 4 of the bill as last amended sufficiently charges undue influence upon the part of the husband, L. W. Johns, in causing or inducing the complainant to sign the postnuptial agreements. It was not necessary for the bill to set up the quo modo or the facts constituting undue influence. Cunninghame v. Herring, 195 Ala. 471, 70 South. 148; Alexander v. Gibson, 176 Ala. 262, 57 South. 760; Letohatchie Church v. Bullock, 133 Ala. 548, 32 South. 58; Phillips v. Bradford, 147 Ala. 352, 41 South. 657; McLeod v. McLeod, 137 Ala. 267, 34 South. 228. See specially Alexander Case, supra, where the question is fully discussed, and

cases to the contrary were specially, or in effect, overruled. There is an expression to the contrary in the case of Frederick v. Hartley, 202 Ala. 43, 79 South. 381, but the same was dictum, as the bill there attempted to set up the quo modo, and the facts set up did not sufficiently charge undue influence, and said expression was not only not necessary to a decision of the case, but is contrary to the established rule as laid down in the cases supra.

[7-9] It is no doubt true that a court of equity has jurisdiction for the enforcement of all trusts, and can generally be called upon by an interested party to construe or interpret the instruments creating or regulating the same; but in order to obtain an interpretation the instrument should be ambiguous or susceptible of a double meaning or construction, and where there is no bona fide doubt as to the true meaning and intent of the provisions of the instrument creating the trust, or as to the particular course that the trustee should pursue, there is no need for equitable interference. 3 Pomeroy, Eq. Jur. § 1064; Clay v. Gurley, 62 Ala. 14. The last alternative of the bill does not charge any action or inaction on the part of the trustees in violation of the plain and unambiguous terms of the postnuptial agreements, or a misconstruction or misinterpretation of same by the trustees. Nor do the instruments in question present an ambiguous or double meaning which would require construction by a court of equity. The demurrer, however, presenting this question, goes to the whole bill as amended, and not to this feature of same. It is a settled rule that if the bill contains equity, though subject to specific grounds of demurrer, the defect cannot be questioned by a demurrer addressed to the bill in its entirety. Macke v. Macke, 200 Ala. 260, 76 South. 26; McMahon v. McMahon, 170 Ala. 338, 54 South. 165.

The decree of the circuit court is affirmed. All Justices concur.