On February 10th, 1930, complainant Allan P. Ames, and defendant, Bank of Nutley, entered into an agreement in writing whereby Ames deposited with the bank as trustee certain insurance policies on his life and agreed to open a special deposit account and to deposit therein $2,300, and the further sum annually of $4,800, in monthly installment payments, the first installment to be paid on February 15th, 1930. The fund thus created was to be invested and reinvested, but not less than $2,500 was to be invested in securities in "liquid form" and the balance in said special account was not normally to exceed $100, except at such times when money was needed for the payment of premiums. Quarter-annual statements showing the status of the special account, and monthly statements of any arrears in deposits were to be furnished to Ames, and if it appeared that he was in arrears resulting in insufficient moneys for the payment of premiums, the trustee was authorized to transfer from the cash and securities held by it such amount as was necessary to make up the deficit.
Upon the death of Allan P. Ames, the trustee was to collect the insurance due on the policies, invest the same and pay the income and principal as provided in the trust agreement. Ames reserved to himself the right to designate in writing the investments to be made by the trustee, which, if exercised, relieved the trustee of responsibility except that of safe keeping, accounting and collection of income. When the annual *Page 230 
income accruing from investments in the opinion of Ames was sufficient for the payment of premiums, no further obligation to make deposits was required. He also retained the right to alter or revoke the trust in whole or in part. The trustee was authorized to deduct commissions as specified in the agreement from income, and was not responsible for any acts in the administration of the trust nor for any mistake in judgment or decrease in value or loss in the trust estate nor for any cause whatever, except bad faith or gross negligence.
Defendant-trustee assumed the trust. Complainants now charge that the trustee invested all of the trust fund in mortgage bonds of the Nutley Mortgage and Title Guaranty Company, with the exception of about $500, at a time when it was also the trustee in the indenture for the issuance of such bonds; that directors and officers of the defendant-trustee were also directors of the title mortgage company; that Ames was induced to consent to such investment upon the express agreement that when cash was required wherewith to pay premiums from time to time, the trustee would repurchase such bonds at par and thus maintain the liquidity required under the trust fund, except for which agreement the complainant Allan P. Ames, would not have consented to such investment.
It is not denied by the defendant that it presently holds as trustee mortgage bonds of the Nutley Mortgage and Title Guaranty Company, a great many, if not all of which bonds it purchased for the trust from itself.
On or about September, 1933, annual premiums became due on some of the insurance policies, and the trustee then possessed of insufficient cash to pay the same failed and refused to liquidate sufficient bonds by repurchasing the same and thus restore the liquidity required under the trust.
The bill prays that the defendant be decreed specifically to perform its agreement; that the investment of the trust fund in mortgage bonds of the Nutley Mortgage and Title Guaranty Company purchased from itself be decreed a breach of trust, and that the defendant be decreed to repurchase all of said bonds now held in the trust fund at par. *Page 231 
It appears that Ames in paragraph 7-b. of the trust agreement, retained the right to designate in writing the investments to be made by the trustee upon ten days' notification by the trustee of the availability of funds for investment. Upon failure to make such designation within the ten days, the trustee was directed to invest in such stocks, bonds, securities and other property as it deemed advisable whether or not such investment is authorized by the laws of the State of New Jersey governing the investment of trust funds. The provision with respect to Ames' right to designate in writing the investments to be made was at no time regarded or acted upon. Ames testified that immediately upon signing the trust agreement, "I asked Mr. Hill" (the president of the bank) "what securities he would recommend for the investment of the surplus and the deposits from this fund. Mr. Hill immediately suggested the bonds of the Nutley Mortgage and Title Guaranty Company." He says that he raised the point at that time that the primary purpose of the trust was to protect his insurance and that it was vital to him to have securities which would protect the premiums by producing income to pay the same; that he did not question the safety of the investment "but I did ask him if they could be liquidated promptly at the time when the premiums became due, because there was a provision of my agreement with the bank that my deposits of $400 a month should be invested promptly as soon as they were made, so as to produce the largest amount of income. Mr. Hill said that in his opinion these certificates were not only safe investments, but the most convenient investments because they were being dealt in all the time by the bank, the bank carried a large number of them in its own portfolio and was in a position to switch these certificates back and forth from the trust account to the portfolio of the bank when such occasion arose. He said that on account of the close association of the bank and the trust company, he spoke with authority and knowledge on this point. And on such representations from Mr. Hill I consented to this investment. No other investment was suggested by Mr. Hill except these certificates." Thereafter semi-annual statements furnished by the bank show no investments except in mortgage bonds of the Nutley Mortgage and *Page 232 
Title Guaranty Company, but such statements also show sales of such bonds from time to time in order to furnish the liquidity provided for in the trust agreement. The last sale shown on the statement of April 27th, 1933, took place January 10th, 1933.
Mr. Hill, vice-president, cashier, and one of the directors of the bank, with respect to the agreement which Ames says he made with the bank to repurchase the mortgage bonds from time to time so as to maintain the liquidity provided, testified, "substantially, I think what Mr. Ames said was correct. I did not commit the bank of Nutley, however, to any definite policy or plan of repurchasing the bonds. We were buying and selling the bonds at that time, and for quite a long time thereafter."
I am satisfied that the agreement to repurchase the mortgage bonds at par was made by Mr. Hill for the bank, and that the bank, through its directors, ratified and confirmed that agreement, for it appears by the evidence that from the inception of the agreement in February, 1930, until January 10th, 1933, the defendant bank regularly, when necessary, in order to keep the trust fund liquid so as to meet insurance premiums when due, repurchased sufficient bonds wherewith to pay the same. The market for these bonds was entirely local. When that market was no longer active because of the present financial stress, the bank refused to further carry out its agreement. Letters in evidence written by Mr. Hill to Mr. Ames set forth the refusal of the board of directors of the bank to further repurchase the bonds and the reason therefor. In one of the letters dated April 13th, 1933, Hill, after stating that the fund is entirely invested in Nutley Mortgage and Title Guaranteed five and one-half per cent. bonds, says, "but inasmuch as the market for these bonds is very limited, particularly under existing conditions, we thought it might be well to point this fact out to you as in the past we have not hesitated to buy and sell these bonds but cannot continue to adopt this position."
Now as to the self-interest of the trustee by reason of the interlocking directorate existing between the mortgage company and the bank, and the appointment by the mortgage company of the bank as trustee in the bond indenture, all of *Page 233 
this was thoroughly explained and understood by Ames and he freely and understandingly assented to the purchase, although he had expressly reserved to himself the right to direct the kind of investments and had the power to terminate the trust. There is no imperative rule of equity that a transaction such as this between the parties is necessarily, in every instance, voidable. The presumption of invalidity may be overcome by the trustee. 2 Pom.Eq. Jur. § 958. In the instant case that has been done.
There is, of course, abundant authority that when the trustee deals with the trust property, but not directly with the cestuique trust, and without the latter's intervention, the trustee cannot, without the knowledge and consent of the cestui quetrust, directly or indirectly become the purchaser. Such a purchase is always voidable, and will be set aside on behalf of the beneficiary, unless he has affirmed it, being sui juris, after obtaining full knowledge of all the facts. It is entirely immaterial to the existence and operation of this rule that the sale is intrinsically a fair one, that no undue advantage is obtained, or that a full consideration is paid, or even that the price is the highest which could be obtained. The policy of equity is to remove every possible temptation from the trustee. If the arrangement is made with the knowledge and consent of the donor of the power this principle cannot apply. In the instant case there was no fraud practiced upon the donor, and if the trustee acquired a personal benefit, it was only because the donor intended that it should have it. Capron v. Luchars,110 N.J. Eq. 338; affirmed, 112 N.J. Eq. 373.
The concern of Ames at the time the investment was made in the mortgage bonds was only as to the marketability of the bonds in order to maintain liquidity of the fund for the purpose expressed in the trust. At no time did he, by any act or conduct of his, relieve or release the trustee from the provision in the trust agreement affecting liquidity to the extent of $2,500, and the agreement to repurchase bonds as and when required for the payment of premiums has been definitely and clearly established and will be specifically enforced.
Decree in accordance with the foregoing conclusions. *Page 234