89 So.2d 616

The MERCHANTS NATIONAL BANK OF MOBILE, As Trustee,

v.

Loyd COWLEY and Lucille Sutton, As Executors, et al.

1 Div. 588.

Supreme Court of Alabama.

May 10, 1956.

Rehearing Denied Oct. 4, 1956.

Vickers & Thornton, Mobile, for appellant.

Sidney J. Gray, Mobile, for appellees.

GOODWYN, Justice.

This is an appeal by the Merchants National Bank of Mobile, as trustee, from a final decree rendered by the Circuit Court of Mobile County, in equity, in a declaratory judgment proceeding brought by said Bank, as trustee, against Loyd Cowley and Lucille Sutton, as executors of the will of

Norma S. Cowley, deceased, Loyd Cowley, Janeillen Cowley and Rosemary Cowley (the younger).

The questions presented are:

I. Whether the property and assets devised and bequeathed to Norma S. Cowley by the will of her father, Lee E. Sutton, deceased, passed, on her death, to the beneficiaries named in a trust agreement originally entered into by Norma S. Cowley and said Bank, as trustee, on June 15, 1949, and amended on December 10th and 13th, 1949, and "restated" on March 13, 1952, and amended on November 24, 1952, or to the residuary devisees and legatees named in her will dated December 13, 1949, as modified by a codicil on May 3, 1952. The trial court held the residuary devisees and legatees under the will to be entitled to the property, which action appellant assigns as error.

II. Whether said Bank, as trustee, should be required to pay any part of the fee of the guardian ad litem appointed by the court to represent Janeillen Cowley and Rosemary Cowley (the younger), minor beneficiaries under the will of Norma S. Cowley, deceased. The trial court decreed that "the costs and expenses of this proceeding, including a reasonable fee for the guardian ad litem for the minors Janeillen Cowley and Rosemary Cowley, the younger, be * * * taxed one-half against the Merchants National Bank of Mobile, as trustee, and one-half against the estate of Norma S. Cowley, deceased." Appellant assigns as error the taxing against it of one-half of the guardian ad litem's fee.

### I.

On June 15, 1949, Norma S. Cowley executed a trust agreement with the Merchants National Bank of Mobile naming the Bank as trustee and creating a living trust providing for payments to the grantor so long as she may live or "until the trust shall have been revoked or the corpus shall have been consumed; as hereinafter provided for", and naming beneficiaries of the trust on her death. The trust agreement makes provision for the placing of additional property in the corpus of the trust fund, under and subject to the terms of the trust agreement. The trust agreement also contains the following provisions:

"(b) As has been hereinbefore indicated, the grantor shall have the right to withdraw from the *corpus* of the trust fund, whether deposited at the inception of the trust or additionally deposited thereafter, any property that she may desire. The exercise of this power shall be accomplished by the delivery by the grantor to the trustee of a written receipt for the property so withdrawn. Upon the tender of such receipt and in exchange therefor, the trustee shall make, execute and deliver to the grantor any and all instruments in writing that may be necessary and appropriate, in the opinion of the grantor's legal counsel, to release the interest of the trustee in any property so withdrawn.

"(c) This instrument of trust may be changed, altered, modified or added to at any time by the mutual consent of the parties hereto.

"(d) At any time during the grantor's lifetime, she may revoke and terminate this agreement of trust, and may resume possession of the unconsumed *corpus* of the trust estate, upon first giving to the trustee thirty days' written notice of such revocation and termination. Upon the expiration of the said thirty day period and the consequent termination of the trust, the trustee shall deliver to the grantor any and all property then held by it hereunder, and shall make, execute and deliver to the grantor any and all instruments in writing necessary and appropriate, in the opinion of grantor's legal counsel, to release to the grantor any and all rights of the trustee in such property."

Attached to the trust agreement, and made a part thereof, is a schedule and receipt,

denominated Schedule "A" and identified by the signatures of the parties, which lists the items of property delivered to and to be held and administered by the Bank under the trust agreement. This list consists only of personal property.

On September 28, 1949, Lee E. Sutton, the father of Norma S. Cowley, died leaving a last will and testament which was duly probated in the Probate Court of Mobile County, by the terms of which he devised and bequeathed certain real and personal property to Norma S. Cowley.

On December 10, 1949, Norma S. Cowley executed the following instrument:

"Be It Known that, Whereas, heretofore on the 15th day of June 1949, I, the undersigned Norma S. Cowley, did set up a trust fund, in the hands of Merchants National Bank of Mobile as trustee, by a trust indenture, bearing the said date and executed by me and by the said trustee; and

"Whereas in the said trust indenture I reserved the right to place additional property in the *corpus* of the trust fund at any time; and

"Whereas I now wish to exercise the said right to add to the trust fund:

"Now, I Do Transfer, Assign, Set Over And Convey unto the said Merchants National Bank of Mobile, As Trustee As Aforesaid, for addition to the corpus of the said trust fund, all and singular that property which presently consists of my right to that certain devise and legacy to me, contained in the last will and testament of Lee E. Sutton, deceased, which will was admitted to probate on, to-wit, the 28th day of September, 1949, in the Probate Court of Mobile County, Alabama, is there recorded in Will Book 25, page 472, and is now in process of execution by the executor therein named;

"Together with all rights, members, tenements and hereditaments thereunto belonging or in anywise appertaining;

"To Have And To Hold unto the said trustee, its successors and assigns forever, but *upon the trusts in the said trust indenture hereinbefore mentioned*: and, pursuant to the provisions of the said trust indenture, the said property shall become a part of, and merged with, the corpus of the said trust fund, and subject to all the provisions, terms and conditions contained in the said Indenture of Trust."

On December 13, 1949, Norma S. Cowley and the Bank executed an amendment to the trust indenture making changes in fractional shares of the trust estate to go to certain of the beneficiaries. (Article V of the trust indenture provides for disposition of the remaining net corpus of the trust estate upon the grantor's death. Clause (a) of Article V provides for distribution of fractional shares to certain named beneficiaries. The amendment is of Clause (a).)

Also on December 13, 1949, Norma S. Cowley executed her last will and testament, containing the following residuary clause:

### "III

"I give, devise and bequeath to my brother-in-law, Loyd Cowley, of Mobile, Alabama, all the rest, residue and remainder of my property; provided, however, that nothing herein contained shall be construed as intended to pass, or to affect in any way, the property which, at the time of my death, shall constitute the *corpus* of the trust fund set up by me in the hands of the Merchants National Bank of Mobile as trustee by that certain Trust Indenture executed on to-wit, the 15th day of June, 1949, or any addition that may have been made to the said fund after its initial setting up, or any interest, proceeds, income or increment thereto, then in the hands of the said trustee."

On March 13, 1952, Norma S. Cowley and the Bank entered into an agreement reciting the following:

"Whereas, An Indenture And Trust Agreement was heretofore on June 15, 1949, entered into by and between Norma S. Cowley of the City and County of Mobile, Alabama, and The Merchants National Bank of Mobile; and

"Whereas, said Trust Agreement was heretofore on December 13, 1949, amended, changed or altered by the Parties thereto; and

"Whereas, it is the present desire of the Parties thereto to make certain additional amendments, changes or alterations therein; and

"Whereas, in order to facilitate the handling of the trust created by said Trust Agreement without the necessity of considering numerous amendments thereto, it is the desire of the Parties hereto to state afresh, in its entirety, the Trust Agreement existing between said Parties;

"Now Therefore, said Trust Agreement is re-stated in its entirety as follows:" (To the extent here material the restated agreement makes the following amendments, changes or alterations in the trust agreement as it existed at the time of the restatement: (1) In Article V the fractional shares of some of the beneficiaries are changed and some of the former beneficiaries are deleted and new beneficiaries added. (2) Schedule "A", attached to and made a part of the agreement, lists items of personal property to be held pursuant to the trust indenture identically as set forth in the original trust indenture executed on June 15, 1949. Schedule "A", which is identified by the signatures of the parties constitutes, as stated in the schedule, a receipt by the Bank as trustee "of the below listed items of personal property". No reference whatever is made in the schedule, nor elsewhere in the restated agreement, to the amendment of December 10, 1949, adding to the corpus of the trust fund the property interest of Norma S. Cowley in the estate of her father; nor is any mention made anywhere in the restated agreement of her interest in said estate.)

On May 3, 1952, Norma S. Cowley executed a codicil to her will of December 13, 1949, by which she revoked and cancelled Item III thereof and substituted in its place the following:

"III

"I give, devise and bequeath to my brother-in-law, Loyd Cowley, of Mobile, Alabama; for and during his natural life, with remainder over as hereinafter in this item stated; all the rest, residue and remainder of my property, whether *in praesenti* or *in future,* and whether presently reduced to possession or consisting of choses in action or rights existing but not yet vested in possession, of whatsoever kind, character and description and wheresoever situated; Provided, however, that nothing herein contained shall be construed as intended to pass or to affect in any way the property which, at the time of my death, shall constitute the corpus of that trust fund set up by me, in the hands of The Merchants National Bank of Mobile, as Trustee, and now being administered by that Bank for me as the beneficiary of a living trust, including in such corpus such additions as may be made to the said trust fund by me at any time, or from time to time, after the initial setting up of the said trust fund; and this item of my will shall not pass or affect in any way interest, income or proceeds from, or increment to, the said trust fund in the hands of the said trustee.

"Upon the death of the said Loyd Cowley, the remainder over shall vest absolutely in Janeillen Cowley and Rosemary Cowley the younger daughters of George Cowley and Rosemary Cowley, the elder, his wife. Should this devise and bequest take effect before the said beneficiaries, or either of them, should attain their or her majority, the said George and Rosemary Cowley; or should either of them have died or be otherwise unable to act, the remaining parent; shall have the right and power to receive and receipt for any and all payments and or distributions that may be made hereunder to the said beneficiaries, or either of them and such receipt or receipts will release and absolve the payer or distributer as fully as if the said beneficiaries, or either of them, were of full age and executing in her own proper person."

On November 24, 1952, an amendment of the restated trust agreement was executed by the grantor and the Bank. This amendment recites the following:

"Whereas, an Indenture and Trust Agreement was heretofore on June 15, 1949 entered into by and between Norma S. Cowley of the City and County of Mobile, Alabama and the Merchants National Bank of Mobile; and

"Whereas, said Trust Agreement was amended by mutual consent of the parties from time to time, and

"Whereas, said Indenture and Trust Agreement was restated in its entirety on March 13, 1952 setting out in full the agreement of the parties thereto, and

"Whereas, Clause (a) of Article IV of said restated Trust Agreement authorizes the Grantor to place, at any time, additional property in the corpus of the Trust fund created by said Trust Agreement, and

"Whereas, it is now the desire of the Grantor to place in the corpus of said Trust fund the additional sum of $8,075.74, in cash.

"Now, Therefore, in consideration of the premises, the said Grantor does hereby deliver to the Trustee and said Trustee does hereby accept the sum of $8,075.74, in addition to the $37,000.00 cash which constitutes the last item of Schedule A in said restated Trust Agreement. The said Trustee shall add the said $8,075.74 to the corpus of said Trust fund and hold the same and treat and dispose of the same, both as to the principal and the income therefrom, as if said additional cash had constituted a part of the original Trust Estate as set out and described in said Schedule A annexed to the restated Trust Agreement dated March 13, 1952."

Norma S. Cowley died on January 5, 1953, and her last will and testament and codicil thereto were duly admitted to probate in the Probate Court of Mobile County.

The question presented, in the final analysis, is whether Norma S. Cowley's interest in her father's estate is a part of the property subject to distribution under the terms of her restated trust indenture, as amended, or is a part of her general estate and, as such, distributable to the beneficiaries named in her last will and testament, as changed by her codicil.

The position taken by the Bank is that the original trust agreement, as amended, was not revoked by the restated agreement and that hence Mrs. Cowley's interest in her father's estate was not withdrawn from the trust; this for the reason that the method for revocation or withdrawal, as prescribed in the original trust indenture, was not followed. It is further insisted that the restated trust agreement shows on its face that the grantor did not revoke the original trust agreement, as amended; that the original trust agreement and the restated trust agreement are not clear and unambiguous on their faces and that, there-

fore, parol testimony was admissible to determine the grantor's intention. Over appellee's objection testimony was offered of two attorneys who attended to Mrs. Cowley's affairs and who drew the several instruments here involved. Their testimony was to the effect that Mrs. Cowley had no intention of withdrawing her interest in her father's estate from the operation of the trust agreement.

The position taken by appellees is that the original trust agreement was revoked by the restated agreement and that the restated agreement, as amended, constituted the entire trust agreement; that when the restated agreement was executed the legal and equitable title to the property held by the Bank, as trustee, under the original trust agreement, as amended, and left out of the restated agreement, merged in Mrs. Cowley and that the trust was thereby terminated as to that property. It is further insisted that the restated trust agreement is clear and unambiguous and that parol testimony as to the grantor's intention should not be considered.

The trial court held that the trust agreement executed on March 13, 1952, as amended, constituted the full and complete agreement between the parties and that the "prior trust agreement" entered into on June 15, 1949, as added to and amended, was effectively revoked by the 1952 agreement. It was further held that the 1952 agreement is not of ambiguous or doubtful import; that none of the property or assets which Norma S. Cowley received or would be entitled to receive under the will of her father was subject to the 1952 trust agreement; and that such property and assets passed under the residuary clause of Mrs. Cowley's will and codicil thereto. We find no error in so holding.

■ There seems to be no question that the settlor of a trust, "if he desires to do so, and expresses his intention in the trust instrument or in other appropriate way, * * * may retain in himself a power to change the terms of the trust in general or in one or more particular ways

specified, as with regard to the names and shares of the cestuis, the personnel of the trusteeship, or the property to be subject to the trust. * * * So likewise the settlor may by express provision vest in himself a power to revoke or cancel the trust at will, or on the happening of a certain contingency." Bogert, Trusts and Trustees, Vol. 4, Part 2, § 994, pp. 441, 442.

■ It is further established as a general proposition that where the settlor reserves a power to revoke the trust in a particular manner, he can revoke it only in that manner. Thus if he reserves power to revoke by a notice in writing to the trustee, he cannot revoke without such notice. Scott on Trusts, Vol. 3, § 330.8, p. 1805; Bogert, Trusts and Trustees, Vol. 4, Part 2, § 996, p. 459; 89 C.J.S., Trusts, § 89, p. 913. But it has been held, and with good reason, that a provision for notice in writing to the trustee is for the benefit of the trustee and may be waived by the trustee. Wade v. McKeown, 193 Okl. 415, 145 P.2d 951, 954; Miller v. Exchange National Bank, 183 Okl. 114, 80 P.2d 209; St. Louis Union Trust Co. v. Dudley, Mo.App., 162 S.W.2d 290, 293, 295; Security Trust Co. v. Spruance, 20 Del.Ch. 195, 174 A. 285, 288; Annotation 131 A.L.R. 468, 469; Scott on Trusts, Vol. 3, § 330.8, n. 1, Cumulative Pocket Supplement; 89 C.J.S., Trusts, § 91, p. 919. And our view is that the requirement of notice in the 1949 trust agreement was for the benefit of the trustee Bank which it waived by entering into the 1952 agreement. It is further our view that the execution of the 1952 agreement constituted an effective revocation of the 1949 agreement, as amended.

In the final analysis, the only purpose to be served by the notice in writing would have been to evidence the settlor's intention to revoke, a power expressly reserved to her in the trust instrument. And this power rested with her alone, the only contingency being the provision for thirty days' written notice to the trustee. Obviously, it seems to us, this notice was for the benefit of the trustee to give it the

right, if it should elect so to do, to postpone revocation of the trust for a maximum period of thirty days. Being for its benefit there seems no reason why it could not waive the requirement. In Miller v. Exchange National Bank, supra, it was held that a requirement of thirty days' written notice to the trustee and the payment of a $25 fee were solely for the benefit of the trustee and could be waived. As there stated [183 Okl. 114, 80 P.2d 211]:

"Apparently this exact problem has never before been called to the attention of this court, since there seems to be a lack of authority upon the point. The beneficiaries, in their brief, have cited numerous cases from other jurisdictions, all holding that where a trust has once been created it can only be revoked in the manner provided.

\* \* \* \* \* \*

"Obviously the provision as to thirty days' written notice was for the benefit of the trustee. It could not have been considered as being of any advantage to the beneficiaries. The grantor having reserved this power of revocation, it could not have mattered to them whether the trustee had one day's notice or thirty days' notice, so long as the grantor determined to exercise this power of revocation.

"This provision being for the benefit of the trustee, there is no ground for saying that the waiver of the requirement by the trustee was open to attack by the beneficiaries. Although the grantor could not have forced the trustee to waive the provision requiring notice, we hold that, when the trustee voluntarily waived the requirement, the action is not open to attack on the part of the beneficiaries."

It seems to us that the language of the 1952 agreement clearly shows that it was considered by the parties as superseding the prior existing agreement. We see no way of avoiding the effect of the following recitals in the 1952 agreement:

"Whereas, it is the present desire of the Parties thereto to make *certain additional amendments, changes or alterations therein*; and

"Whereas, in order to facilitate the handling of the trust created by said Trust Agreement without the necessity of considering numerous amendments thereto, it is the desire of the Parties hereto to state afresh, *in its entirety*, the Trust Agreement existing between said Parties;

"Now, Therefore, said Trust Agreement is re-stated *in its entirety* as follows: \* \* \*". [Emphasis supplied.]

How can we say that this 1952 agreement is but an amendment of the 1949 agreement, as amended? The 1952 agreement is in itself a complete entity. Although it gives powers previously given and imposes duties previously imposed, it embodies all the terms and conditions of a new trust.

 To effectuate a revocation it was not essential to recite in the later instrument that the prior instrument of trust was thereby "revoked". From Restatement, Trusts, § 330, Comment i, p. 993, is the following:

"If the settlor having such a power of revocation wishes to create a different trust, it is unnecessary formally to revoke the trust and to have the trust property reconveyed to him before creating the new trust; but he can revoke the old trust and create the new one in a single transaction."

From the same authority, § 345, Comment a, p. 1070, is the following:

"If upon the termination of the trust the title of the trustee to the trust property terminates, a conveyance by him is unnecessary to vest the

title in the person entitled to the property."

See, also, Bogert, Trusts and Trustees, Vol. 4, Part 2, § 996, pp. 463, 466; Capron v. Luchars, 110 N.J.Eq. 338, 160 A. 83, affirmed 112 N.J.Eq. 373, 164 A. 447; 54 Am. Jur., Trusts, § 73, p. 76; 89 C.J.S., Trusts, § 88, p. 908.

From 54 Am.Jur., Trusts, § 73, p. 76, supra, is the following:

"The effect of the termination of a trust is to bring to a conclusion the separation of legal title and equitable ownership, the title, corpus, and principal, including accumulations of income, passing to the beneficiaries entitled to it; it is the duty of the trustee to pay or turn over the estate to them and to make a conveyance to them where conveyance is necessary to clear the legal title. * * *"

The following is from 89 C.J.S., Trusts, § 88, p. 908, supra:

" * * * Trust property is revested in a settlor without a reconveyance by the trustee on the revocation of a trust created by the settlor for himself as beneficiary with remainder over to the executors appointed by his will. * * *"

A further insistence by appellant is that the 1952 agreement is not clear and unambiguous, thus making parol evidence admissible to show that Mrs. Cowley did not intend to withdraw the interest in her father's estate from the operation of the 1952 agreement. The ambiguity insisted upon is that the "documents" are not clear in that they make contradictory statements. In its brief appellant says:

"By virtue of the original trust as amended, which is still in being, the Sutton assets were a part of the corpus of the trust, and by virtue of the restated trust agreement the Sutton assets were not a part of the corpus of the trust. Under these circumstances,

who can say with certainty what became of the Sutton assets? The mere asking of the question answers itself and the answer is: Because of the conflicting statements of the grantor, it is not possible to determine with certainty what she intended and therefore the Court cannot say what disposition must be made of the Sutton assets."

In other words, appellant urges on us this: The first deed of trust deals with the Sutton assets. The second does not deal with these assets. Therefore, the second deed is ambiguous. We are unable to follow this argument. As stated in Birmingham Trust & Savings Co. v. Cannon, 204 Ala. 336, 342, 85 So. 768, 773:

"It is no doubt true that a court of equity has jurisdiction for the enforcement of all trusts, and can generally be called upon by an interested party to construe or interpret the instruments creating or regulating the same; but in order to obtain an interpretation the instrument should be ambiguous or susceptible of a double meaning or construction, and where there is no bona fide doubt as to the true meaning and intent of the provisions of the instrument creating the trust, or as to the particular course that the trustee should pursue, there is no need for equitable interference. 3 Pomeroy, Eq.Jur. § 1064; Clay v. Gurley, 62 Ala. 14. * * *"

See, also, Ingalls v. Ingalls, 256 Ala. 321, 330, 54 So.2d 296; Hawkins v. Tanner, 243 Ala. 641, 646, 11 So.2d 351; Hoglan v. Moore, 219 Ala. 497, 501, 122 So. 824; McGhee v. Alexander, 104 Ala. 116, 121, 16 So. 148. In 32 C.J.S., Evidence, § 960, pp. 903–904, the rule is stated as follows:

"Parol or extrinsic evidence of the intention of the parties may be received to clear up an ambiguity by reason of which such intention is not definitely expressed; but, where the writing is free from ambiguity, parol evidence is not admissible to show that

the real intention of a party was other than that clearly expressed by the writing."

 Patently, it seems to us, the 1952 agreement is clear and unambiguous. Being so, oral testimony varying its terms cannot be considered.

## II.

We come now to appellant's contention that it should not have been taxed with one-half of the fee allowed the guardian ad litem which was included in the costs, one-half of the costs being taxed against the appellant and one-half against Mrs. Cowley's estate. Under the provisions of Code 1940, Tit. 7, § 180, guardian ad litem fees are to be taxed as a part of the costs. Since this is a declaratory judgment proceeding, the apportionment of costs is subject to the provisions of Code 1940, Tit. 7, § 165, as follows:

"§ 165. Costs.—In any proceeding under this article the court may make such award of costs as may seem equitable and just."

Also applicable is Equity Rule 112, Code 1940, Tit. 7, Appendix, which, in pertinent part, is as follows:

"Costs will be imposed by the court or judge having jurisdiction at such times during the litigation as he deems proper, subject to correction for improper exercise of his discretion, and may be apportioned by him between the parties; * * *."

In referring to Equity Rule 112, supra, it was stated in Dozier v. Payne, 244 Ala. 476, 477, 14 So.2d 376, 377, as follows:

"This rule needs no elaboration. It follows the long established rule in equity vesting in the chancellor a dis-cretion in the taxation of costs; but, says the rule, 'subject to correction for improper exercise of his discretion.' An 'improper' exercise of discretion appears when the record, after indulging all fair intendments in favor of the ruling, discloses the taxation of costs was unjust and unfair. Otherwise the action of the trial court should not be disturbed.

"The general rule at law, usually followed in equity, is to award the costs in favor of and not against the successful party in the suit. As a rule this is just. Apportionment of costs may be just in many instances dependent upon the particular case. * * *"

In Thompson v. Bryant, 251 Ala. 566, 569, 38 So.2d 590, 593, it is stated as follows:

"* * * In equity the matter of costs rests largely in the discretion of the chancellor. * * *"

 We cannot say that there was an improper exercise of discretion by the trial court in taxing the costs equally against each trust estate. Furthermore, the usual rule is to tax the costs in favor of the prevailing party, Dozier v. Payne, supra; Martin v. Carroll, 259 Ala. 670, 675, 68 So.2d 721, which, if applied to this case, would have called for taxing all of the costs against appellant. We see no basis for complaint by appellant in being taxed with only one-half of the costs.

It follows from what we have said that the decree of the trial court is due to be affirmed. So ordered.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and SPANN, JJ., concur.