U.S. Steel Mining Company ("U.S. Steel") filed two complaints for declaratory judgment in the Circuit Court of Jefferson County, Bessemer Division, seeking a determination of the proper recipients of workmen's compensation benefits and life insurance proceeds stemming from the death of Jerry D. Herren, a U.S. Steel employee killed in an accident on the job. *Page 732 
Common questions of law and fact prompted the court to consolidate the actions, which were heard on June 17, 1985.
The trial court found that Jerry D. Herren ("Herren"), died February 15, 1985, of injuries incurred in an accident which "arose out of and in the course of his employment with U.S. Steel Mining." At the time of his death, Herren had weekly earnings of $576.60 and all parties, and the court, stipulated that the maximum death benefit payable under workmen's compensation is $290.00 per week for a maximum of 500 weeks. Herren, the court found, was survived by his wife, Cynthia Leigh Herren and two natural children: James Brandon Herren, a son by Cynthia, born September 6, 1981; and Ginger Denise Frawley (formerly Herren), a daughter born September 3, 1974, to Herren and his former wife, Kathy Frawley (formerly Herren). Herren and Kathy were divorced on January 11, 1978. The decree incorporated an agreement that Kathy be awarded custody of Ginger and that Herren pay child support. Paragraph 10 of the agreement stated "That the plaintiff [Herren] shall make the minor child of the parties [Ginger] irrevocable beneficiary under the life insurance policy in effect at the U.S. Steel — Concord Mines."
The court found, further, that the group life insurance policy with U.S. Steel in effect at Herren's death, had begun March 27, 1978, as a result of negotiations between U.S. Steel and the United Mine Workers Association ("UMWA"). Under this policy, a $30,000.00 death benefit is payable with double indemnity for accidental death — $60,000.00 in Herren's case. "Prior to March 27, 1978," the court found, "life insurance was provided through a policy with the UMWA Health and Retirement Fund . . . a $10,000.00 benefit, with no double indemnity for accidental death." No evidence was presented that showed Herren had ever made Ginger the irrevocable beneficiary of his life insurance. An enrollment card for the policy in effect at his death, dated April 21, 1978, revealed that he had named his brother beneficiary and that, on February 15, 1980, he had changed his beneficiary to his wife Cynthia, now his widow.
Herren's former wife, Kathy, married Steve Frawley on June 23, 1979. Frawley petitioned the Probate Court of Marion County to allow him to adopt Ginger. Herren consented, and the petition was granted on November 13, 1979, thus relieving him of any further obligation of support or rights concerning Ginger. Ex parte Bronstein, 434 So.2d 780 (Ala. 1983); Code ofAlabama 1975, § 26-10-5 (b). At the time of his death, the court found, Cynthia Leigh Herren (the wife) and James Brandon Herren (the son) were wholly dependent on Herren for their support, but that Ginger Denise Frawley received no support from Herren and Herren was under no legal obligation to provide support.
The trial court said that
 allocation of death benefits between a widow wholly dependent, in fact, upon the deceased worker; a natural child wholly dependent, in fact, upon the deceased worker, and a natural child of the deceased worker, not dependent on him and adopted by the husband of his former wife, the child's natural mother,
presents a question of first impression under the workmen's compensation law. At issue is Ginger's entitlement, if any, to benefits under the law, given her adoption by Steve Frawley.
Section 25-5-61 (1) and (3), Code of Alabama 1975, recognizes that the workman's wife, his minor children less than age 18, and children over age 18 who are mentally or physically incapacitated from earning a living, are presumed conclusively to be wholly dependent. The court noted that § 25-5-1 (2) defines "children" as those who, by law, are entitled to inherit from the deceased, and the court added:
 The question of the right of an adopted child to inherit from its natural parents was previously covered by section 26-10-5 (c) of the Code [1975] which included that "Nothing in this chapter shall be construed as debarring a legally adopted child from inheriting property from its *Page 733 
natural parents or other kin." This section was modified by Act 82-399 of the regular session of the legislature to eliminate this language, but, that same act, in section 2-109 (1) states "adoption of a child by the spouse of a natural parent has no effect on the right of the child to inherit from or through either natural parent."
The court concluded that Ginger Frawley was within the definition of persons presumed conclusively by statute to be wholly dependent, as the statute had been interpreted by the Alabama Court of Civil Appeals in Central Foundry v. Brown,381 So.2d 635 (Ala. 1979); but the court went on to distinguishCentral Foundry from the present case. The trial court said that Central Foundry concerned adopted children who were opposing an employer who sought to avoid paying any benefits under the Workmen's Compensation Act, "while this case presents an entirely different set of circumstances and `double dependency' under these facts becomes quite disturbing." It further said that to hold that this case requires "the adopted child should share equally with the other parties involved would not be equitable." It noted Judge Holmes's special concurrence in Central Foundry that although an adopted child retained a right to inherit from the natural parents, even though their legal relationship had been severed, he could see "no rational basis" for such an allowance.
Sections 25-5-62 through 25-5-64, the court said, showed a clear legislative intent "to grant to the courts discretion to apportion benefits based upon actual dependency," and the trial court added that this Court has stated the following in Blansitv. Cornelius Rush Coal Co., 380 So.2d 854 (Ala. 1979), at 860:
 The primary and obvious legislative purpose of the Act as a whole (when death results from an on-the-job injury) is to provide dependents with a measure of subsistence for a prescribed period. (Emphasis by the trial court.)
The court found that one-half of the workmen's compensation benefit should be paid to Herren's widow, Cynthia, and one-half to Cynthia "for the use and benefit of James Brandon Herren." The court further ruled, should Cynthia become disqualified for such compensation under § 25-5-66 [remarriage], and provided that the minor children, Ginger and James, qualify under §25-5-65 at that time, one-half should be paid to Cynthia for the use and benefit of James and the other one-half should be paid to Kathy Frawley for Ginger's use and benefit.
As to the proper recipient of the proceeds of Herren's life insurance policy, the court found that the policy in effect at the time of his death was a new policy and "not subject to the Final Decree of Divorce of January [1978], and, more specifically, paragraph 10 of that decree relating to insurancein effect at the date of the decree." (Emphasis by the trial court.) The policy in effect at the time of the divorce, the court said, was the one administered by the UMWA; the court noted that it contained no double indemnity provision, while the later policy did, and that it was different in amount from the later policy. The court found that the requirement of an enrollment card for the policy in effect at Herren's death further distinguished it as "a new and different policy." If there had been no new policy, the enrollment of members eligible would not have been necessary. Ginger had no legal or equitable interest, the court found, "in the proceeds of the policy of life insurance which did not exist at the time of the Divorce Decree." Cynthia, Herren's widow, was declared the proper beneficiary of the insurance proceeds.
The court awarded $21,750.00 to counsel for Cynthia Herren and James Brandon Herren, to be paid by U.S. Steel, and further ordered U.S. Steel to pay $5,000.00 to the guardian ad litem appointed to represent Ginger Frawley.
The questions before this Court on appeal are: *Page 734 
 (1) May the court distribute workmen's compensation benefits in such a way as to exclude a natural child of the deceased on the grounds that she has been adopted by her stepfather and no longer looks to her natural father for support?
 (2) Did the trial court err in finding that the life insurance policy in effect at the time of Jerry Herren's death was a "new" policy — distinct from the policy in effect at the time of his divorce from Kathy Frawley — and, therefore, not subject to any claim of Ginger Denise Frawley?
 (3) Did the trial court err by taxing to U.S. Steel a fee for the guardian ad litem of Ginger Denise Frawley?
 I.
The Code of Alabama 1975, § 25-5-61 (3), provides that "every child under the age of eighteen is conclusively presumed to be `wholly dependent' upon its natural parent." In Central FoundryCo. v. Brown, 381 So.2d 635 (Ala.Civ.App. 1979), cert. denied,381 So.2d 637 (Ala. 1980), the Court of Civil Appeals said that "there is no statement in the Workmen's Compensation Act which indicates that the act of adoption takes a child out of the terminology of `children' of his natural father." See id. at 636. Writing for the Court in Central Foundry, Judge Wright concluded:
 We consider the reasonable construction of § 25-5-61
(3) is that every child under the age of eighteen is conclusively presumed to be "wholly dependent" upon its natural parent, even though at the time of the death of the parent, the child had been adopted by and is living with adoptive parents. While this may in some instances result in a double dependency, we do not find this disturbing. The legislature in § 26-10-5 (c) has given an adopted child the right to double inheritance. Such child may inherit from the adoptive parents and from the natural parents or other natural kin as well.
The present case, the court said, stands apart from CentralFoundry because that case involved an adopted child's challenge to an employer who sought to avoid paying benefits on the grounds that the child was no longer dependent on its natural father. The court also cited Blansit v. Cornelius Rush CoalCo., 380 So.2d 859, 860 (Ala. 1980), in support of its conclusion that "subsistence" is the primary objective of workmen's compensation and that to award benefits to a child not actually dependent upon the natural father would not be equitable. We disagree. Although it may be true, as Judge Holmes said in Central Foundry, that there may be no apparent rational basis for permitting an adopted child to retain a birthright of inheritance from his or her natural parents after termination of their legal relationship, the law is not vague on this point. In fact, Judge Holmes concurred in the result inCentral Foundry, notwithstanding his doubts in that regard.
In Blansit, this Court granted certiorari to review the Court of Civil Appeals' affirmance of a judgment awarding workmen's compensation benefits to the widow of an employee and excluding his natural children who had been adopted and were living with their mother and stepfather at the time of his death. Justice Jones, writing for the majority, said:
 [T]he legislature did not intend to make a widow and minor children separate classes of total dependents to the exclusion of each other. § 25-5-61
establishes a special class of total dependents who are presumed to be wholly dependent. The spouse and children of the decedent are the sole members of this class. It is inconceivable that the legislature would presume such children to be wholly dependent in one section, and then proceed to totally exclude them from benefits in the following section.
In the present case, the trial court said that §§ 25-5-62
through 25-5-64 confer upon the courts "discretion to apportion benefits based upon actual dependency." Blansit leaves no doubt that the court's discretion to apportion benefits does not extend to outright exclusion of one statutorily *Page 735 
presumed to be wholly dependent upon the decedent. The trial court construed its discretionary authority to mean that it could place Ginger in a separate class, entitled to benefits only if Cynthia, Herren's widow, died or remarried. There is no support for such a construction. Here, as in Blansit, the child is statutorily presumed to have been wholly dependent upon her natural father, and she is "entitled to an appropriate share of the workmen's compensation benefits in accordance with the provisions of § 25-5-60 (1)(b) and (c)." Blansit, supra.
 II.
The circuit court's denial of Ginger's claim to an interest in the life insurance proceeds of her natural father is based upon the finding that the policy in existence at his death was a different policy from that referred to in the divorce decree. The court reasoned that the differences in benefits and amounts of the two policies, plus an enrollment requirement of the "new" policy, supported its finding that Ginger had no legal or equitable interest "in the proceeds of a policy of insurance which did not exist at the time of the Divorce Decree."
By the divorce decree, Jerry Herren agreed to "make the minor child [Ginger] of the parties irrevocable beneficiary under the life insurance policy in effect at U.S. Steel — Concord Mines." The trial court placed special emphasis on the words "in effect," and concluded that the policy at death was distinct from the UMWA policy. We believe this emphasis is misplaced. The divorce decree referred only to the policy in effect at Herren's place of employment, it did not refer to the policy as the UMWA policy. Sometime after the divorce decree, UMWA and Herren's employer, U.S. Steel, agreed in labor negotiations that U.S. Steel would assume the life insurance coverage on its employees. There was no lapse of protection. Benefits then being paid under the UMWA policy were continued under the "new" policy and coverage was improved; a double indemnity provision was added and the amount of the policy was increased.
The court found that Herren never complied with the court order by naming Ginger the irrevocable beneficiary of the $10,000.00 life insurance policy referred to in the divorce decree. Appellees, Cynthia and James Brandon Herren, argue that adoption terminated all legal rights and obligations and that Herren was not required to name Ginger beneficiary after the divorce decree was final. Rau v. Rau, 429 So.2d 593
(Ala.Civ.App. 1982), is cited in support of the conclusion that Ginger had no interest in what the circuit court found to be a new policy. Rau is not applicable here. There, the circuit court imposed a constructive trust on insurance proceeds in favor of the deceased's children by a former marriage. The Court of Civil Appeals reversed, noting that the circuit court erroneously found that the decedent had failed to designate the children as irrevocable beneficiaries as ordered in the divorce decree and had instead made his second wife beneficiary. Further, in Rau, the policy in question was not identified as having been issued at the decedent's place of employment. InRau the father-decedent at the time of his death was at a different place of employment, under a completely new policy, issued as a benefit. In the present case, Herren did fail to name his daughter Ginger as beneficiary of the policy in effect at his place of employment, although he had agreed to do so at the time of his divorce from Kathy Frawley. This Court said inWilliams v. Williams, 276 Ala. 43, 158 So.2d 901 (1963):
 An agreement by an insured, in consideration of the settlement of property rights by which he agrees to make his children the sole irrevocable beneficiaries of a policy of life insurance, vests them with an equitable interest therein which may not be defeated without their consent, and the insured cannot defeat the equitable right of a beneficiary by failing to act. He could not, in equity, be allowed to take advantage of his own wrong in breaching the property settlement and his estate is in no better position. *Page 736 Waxman v. Citizens Nat. Trust Savings Bank of Los Angeles, 123 Cal.App.2d 145, 266 P.2d 48.
This case is like Williams. To recognize Herren's designation of his brother, and later his second wife, as beneficiary, in total disregard for his promise — and the 1978 court order — to designate Ginger as his sole beneficiary would not be equitable. Although the policy in effect at U.S. Steel at the time of Herren's death had increased in amount and a double indemnity clause had been added, it was, in fact, the policy which was in effect at his place of employment, U.S. Steel — Concord Mines, as specified in the divorce decree. Equity regards that as done which ought to be done. Herren's failure to name Ginger as his beneficiary did not defeat her equitable interest in the proceeds.
It would be equally inequitable, however, to award Ginger the full amount of the policy payable upon Herren's death, $60,000.00. The amount referred to in the decree of divorce, the amount which Herren agreed would be paid to Ginger in the event of his death, was $10,000.00. This is the extent of her equitable interest in the proceeds of the life insurance policy in effect at U.S. Steel — Concord Mines at the time of his death.
 III.
The trial court ordered U.S. Steel to pay $5,000.00 to the guardian ad litem of Ginger Frawley. U.S. Steel does not contest the amount or the propriety of assessing a fee, but argues that it was error for the court to tax the fee to U.S. Steel. There is no meaningful distinction here, U.S. Steel contends, between an attorney's fee and a fee for a guardian ad litem; therefore, it says no distinction should have been made by the court. In its order denying U.S. Steel's motion to amend the judgment and/or motion for a new trial, the court referred to its statutory authority under § 6-6-231, Code of Alabama1975:
 In any proceeding under this article, the court may make such award of costs as may seem equitable and just.
This Court has held that, in a declaratory judgment action "the judge's cost ruling is entirely discretionary, and we will not reverse unless it appears from the record, after indulging all fair intendments in favor of the ruling, that the taxation of costs was unjust and unfair." City of Birmingham v. City ofFairfield, 396 So.2d 692 at 697 (Ala. 1981); Walden v. Walden,277 Ala. 459, 171 So.2d 851, 854 (1965). In Merchants NationalBank of Mobile v. Cowley, 265 Ala. 125, 89 So.2d 616 (1956), the trial court assessed one-half of the guardian ad litem fee against the bank in its unsuccessful claim to estate assets that had also been claimed by the minor beneficiaries; this Court held that the trial court would have been within its discretion if it had taxed the full guardian ad litem fee against the losing party, and, therefore, that the court had not abused its discretion by assessing one-half of the costs against the bank. In Cowley, the plaintiff bank was an adversary party.
Here, however, U.S. Steel's declaratory judgment action was for the sole purpose of ascertaining the rightful recipient or recipients of workmen's compensation benefits and life insurance proceeds. U.S. Steel had no other interest in the action and played a non-adversarial role. The trial court determined that a fee was appropriate and awarded $5,000.00 to the guardian ad litem. The Court has found Ginger Denise Frawley to be entitled to an appropriate share of workmen's compensation death benefits and to $10,000.00 of the $60,000.00 life insurance proceeds due to be paid. A guardian ad litem fee, not to exceed 15% of the total workmen's compensation benefits paid to Ginger, plus, in the trial court's discretion, a reasonable amount from the $10,000.00 insurance proceeds should, therefore, be taxed to Ginger Denise Frawley, not to U.S. Steel. Similarly, the fee awarded counsel for Cynthia and James Brandon Herren is limited to a maximum of 15% of the total workmen's compensation benefits paid appellees and, in the trial court's discretion, a reasonable *Page 737 
amount payable from the insurance proceeds.
Accordingly, we find that Ginger Denise Frawley is entitled to $10,000.00 from the life insurance proceeds to be paid pursuant to the policy on the life of Jerry D. Herren, deceased. We reverse and remand to the circuit court for its discretionary apportionment of the total award of workmen's compensation death benefits among the widow and the two minor children.
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, SHORES and STEAGALL, JJ., concur.