CRAWLEY, Judge.
This case deals with the preclusive effect of a federal court decision determining that the proceeds of Stirling Robert Brown’s life insurance should go to his second, and not his first, wife.
Katharine Brown (“the first wife”) and Stirling Brown married in 1958, had four children, and divorced in 1982. The divorce judgment awarded the first wife the marital home and ordered Mr. Brown to convey his interest in the home to her. The judgment provided that Mr. Brown was to have a lien on the homeplace in the amount of $31,332.70 (the value of his equity) and that he would receive the equity when the first wife remarried or the parties’ youngest child reached the age of 19.
The divorce judgment also ordered Mr. Brown to “keep [the first wife] as beneficiary on the life insurance now in effect on his life for as long as [the first wife] remains unmarried.” At the time of the divorce, Mr. Brown was employed by International Paper Company in Mobile and was covered under a policy of group life insurance established by International Paper as part of an employee benefit package. After the divorce, Mr. Brown left International Paper and relocated to Birmingham, where he remarried and secured employment with Rust International Corporation. Upon the termination of his employment with International Paper, his life insurance coverage under the group policy with International Paper ceased.
Like International Paper, Rust also offered its employees a benefit package that included group life insurance. Mr. Brown was covered under the group life policy established by Rust, and he named.his new wife, Patsy Brown (“the second wife”), as the beneficiary.
On April 30, 1989, Mr. Brown died. On August 2, 1989, the first wife sued in the Mobile Circuit Court, seeking to have herself declared the equitable beneficiary of the life insurance policy and to have the court impose a constructive trust in her favor on the proceeds. Two weeks later, the second wife filed an action in a federal district court against Connecticut General Insurance Company, seeking payment of the policy proceeds as the named beneficiary. The first wife’s action was removed to the federal district court for the Northern District of Alabama and was there consolidated with the second wife’s case. Connecticut General paid the insurance benefits into court and interplead-ed the two claimants. The district court entered a summary judgment for the second wife, ruling that she was entitled to the proceeds of Mr. Brown’s life insurance policy. The first wife appealed the judgment of the district court; the Court of Appeals for the Eleventh Circuit affirmed that judgment in Brown v. Connecticut Gen. Life Ins. Co., 934 F.2d 1193 (11th Cir.1991).
In December 1992, the youngest child of Stirling Brown and the first wife reached the age of majority. On June 4,1993, the second *323 wife, as executrix of her husband’s estate,' brought an action in Mobile circuit court to recover Mr. Brown’s $31,332.70 equity in the home he had formerly owned with the first wife. The first wife counterclaimed for $94,-000, the amount of the life insurance proceeds she lost when, she claims, Mr. Brown violated the terms of the divorce judgment requiring him to name her as the beneficiary of his life insurance policy. The second wife filed a motion to strike the counterclaim because, she argued, it raised issues that had been previously litigated and resolved in the federal court. The trial court denied the motion to strike and held as follows:
“[The] decision [of the federal court] is not res judicata to the issues presented here. Neither Stirling Robert Brown nor his estate were parties to that litigation and [the second wife] claimed the proceeds only as beneficiary and not as representative or devisee or legatee of Mr. Brown’s estate. Claims against Stirling Robert Brown or against his estate for violation of the divorce decree could not have been maintained in that action.”
The circuit court ruled that Mr. Brown had failed to comply with the terms of the divorce judgment regarding life insurance, but that the first wife’s counterclaim against the estate was barred for failure to file it within the time required by law. See Ala.Code 1975, § 43-2-350. The court ordered that the first wife was entitled to a setoff of $94,000 against the second wife’s claim of $31,322.70. The second wife appealed; we reverse.
The trial court erred by denying the second wife’s motion to strike the first wife’s counterclaim; the doctrine of res judicata bars the first wife from relitigating the issue raised in that counterclaim — whether she was entitled to the proceeds of Stirling Brown’s group life insurance policy with Rust International.
“The elements of res judicata, or claim preclusion, are (1) a prior judgment on the merits, (2) rendered by a court of eompe-tent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both suits. If those four elements are present, any claim that was or could have been adjudicated in the prior action is barred from further litigation.”
Dairyland Ins. Co. v. Jackson, 566 So.2d 723, 725 (Ala.1990).
Elements (1) and (2): The decision of the federal district court for the northern district of Alabama was a prior judgment on the merits rendered by a court of competent jurisdiction. Mr. Brown’s group life insurance plan was part of an employee benefit package subject to the provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. (“ERISA”). Federal and state courts have concurrent jurisdiction over ERISA civil enforcement actions brought by “a ... beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.” 29 U.S.C. § 1132(a)(1)(B) and -(e)(1).
Element (3): In the federal court action, the parties were the first wife and the second wife, individually. In the state court action, the parties were the first wife, and the second wife, as executrix of the estate of Stirling Brown. Although the estate of Stirling Brown was not a party to the prior action, the second wife adequately represented its interests in the federal lawsuit. As Brown’s widow, the designated beneficiary of his life insurance, and the executrix named in his will, the second wife was so closely aligned with the interests of Brown’s estate as to be its “virtual representative.”
“ ‘ “Judgments can bind persons not party (or privy) to the litigation in question where the nonparties’ interests were represented adequately by a party in the original suit. A person may be bound by a judgment even though not a party to a suit if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative. Moreover, if a party has a ‘sufficient “laboring oar” in the conduct’ of the litigation, then the principle of res judicata can be-actuated.” ’ ”
Green v. Wedowee Hosp., 584 So.2d 1309, 1315 (Ala.1991) (quoting Century 21 Preferred Properties, Inc. v. Alabama Real Estate Comm’n, 401 So.2d 764, 770 (Ala.1981) *324 (quoted in Whisman v. Alabama Power Co., 512 So.2d 78, 82-88 (Ala.1987))).
The trial court was correct in observing that neither Stirling Brown nor his estate was a party to the federal litigation. The conduct of Stirling Brown, however, was very much at issue in that lawsuit. Both wives had every incentive to press their claims vigorously in the federal court — the first wife arguing that Stirling Brown’s conduct was fraudulent enough to require the imposition of a constructive trust in her favor, and the second wife maintaining that Brown committed no impropriety. Under the circumstances, we think both the estate and the first wife had sufficient “laboring oars” in the conduct of the federal litigation.
Element (4): The same cause of action was presented in both actions.
“Whether the same cause of action is alleged in the original lawsuit and the subsequent lawsuit depends upon whether the issues in the two causes of action are the same and whether the same evidence would support a recovery in both lawsuits. Dominex, Inc. v. Key, 456 So.2d 1047 (Ala.1984). ‘Regardless of the form of the action, the issue is the same when it is supported in both actions by substantially the same evidence.’ ”
Thomas v. Lynn, 620 So.2d 615, 616 (Ala.1993). The federal district court adjudicating the ERISA enforcement action addressed the identical issue the first wife later raised in her counterclaim, namely whether there was an equitable basis for imposing a constructive trust in her favor on the proceeds of a life insurance policy naming the second wife as the beneficiary.
In order to show that the federal court addressed the very issues raised in the first wife’s counterclaim, we quote at length from the district court’s unpublished memorandum of decision, which is a part of the record on this appeal:
“The issue to be resolved ... is whether [the second wife], as the named beneficiary of the life insurance policy, is entitled to the proceeds of that policy, or whether [the first wife], as per the agreement incorporated in the divorce decree, is entitled to those proceeds to the extent of the value of Stirling Robert Brown’s life insurance policy at the time of their divorce. There are no facts in dispute which prevent the court from making this determination as a matter of law.
“Movant [the first wife] contends that she has an equitable interest in the proceeds of the life insurance policy and that a constructive trust should be established in her favor. Under Alabama law constructive trusts are used to prevent unjust enrichment and are only imposed when a property interest was acquired by fraud or when it would be inequitable to allow the property interest to be retained by the person who holds it. Coupounas v. Morad, 380 So.2d 800, 803 (Ala.1980). There is no evidence that the life insurance policy with Connecticut General Life Insurance Company was attained by Stirling Brown in an attempt to fraudulently deprive his [first] wife of benefits she was entitled to by way of the divorce decree. Rather, Stirling Robert Brown left his employment with International Paper Company in Mobile, Alabama, thereby terminating his right to maintain a life insurance policy with that company. Stirling Robert Brown subsequently took a job with RUST International Corporation in Birmingham, Alabama, and the proceeds of the life insurance policy in question arose out of a group policy issued by his new employer.
“The determination of whether a life insurance policy is or is not the same as the one in effect at the time of the divorce decree is critical to finding an equitable interest. Frawley v. U.S. Steel Min. Co., 496 So.2d 731 (Ala.1986). There is no question but that the life insurance policy maintained through RUST International Corporation was not a policy in effect at the time of the Judgment of Divorce and, therefore, does not fall within the language of that judgment requiring Stirling Robert Brown to keep [the first wife] ‘as beneficiary on the life insurance now in effect on his life for as long as she remains unmarried.’ While it is true that an ‘insured cannot defeat the equitable right of a beneficiary by failing to act,’ see Williams v. Williams, [276 Ala. 43,] 158 So.2d 901 *325 (1968), there is no act which Stirling Robert Brown could have taken to maintain the life insurance policy then in effect with International Paper Company, his employer at the time of the divorce. Stirling Robert Brown did not purchase the life insurance policy with his subsequent employer, RUST International Corporation, but rather was able to maintain it as a group policy under an employee benefit plan.
“Where there is no evidence that a policy was intentionally dropped and a subsequent policy purchased in its place in order to evade the interest of the beneficiary under'the first policy and the court’s divorce decree, the prior beneficiary does not have an equitable interest in the proceeds of the subsequent policy. Rau v. Rau, 429 So.2d 593 (Ala.Civ.App.1982).[4] There is also no evidence of unjust enrichment to [the second wife]. She had been the wife of Stirling Robert Brown for more than six years at the time of his death and had been named the beneficiary of the life insurance policy in question throughout his greater than five year term of employment with RUST International Corporation.
The first wife argues that the federal court decision should have no preclusive effect because, she says, in that litigation, she had no opportunity to present her state law claim because it was preempted by ERISA. She insists that if her lawsuit had remained in state court and not been removed to federal court, she would have prevailed.
That argument is misleading. While it is true that the first wife’s state law claim was preempted, it is also true that the claim, “though it purported] to be grounded in state law, ‘[was] necessarily federal in character by virtue of the clearly manifested intent of Congress.’” Amos v. Blue Cross-Blue Shield of Alabama, 868 F.2d 430, 432 (11th Cir.1989) (quoting Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 67, 107 S.Ct. 1542,1548, 95 L.Ed.2d 55, 65 (1987)).
“With ERISA, Congress imposed comprehensive federal oversight of employee benefit plans of employers engaged in interstate commerce. Under ERISA Section 502(a), as set forth in 29 U.S.C. § 1132(a)(1)(B), a civil action may be brought by a participant or beneficiary ‘to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.’ This limits the options of the employee, who is preempted from bringing actions under state laws when they ‘relate to’ any employee benefit plan.”
HealthAmerica v. Menton, 551 So.2d 235, 238 (Ala.1989), cert. denied, 493 U.S. 1093, 110 S.Ct. 1166, 107 L.Ed.2d 1069 (1990). “This conversion of a state law claim into a federal claim is sometimes called ‘super preemption,’ Brown v. Connecticut Gen. Life Ins. Co., 934 F.2d 1193, 1196 (11th Cir.1991).” Hemphill v. Unisys Corp., 855 F.Supp. 1225, 1231 (D.Utah 1994).
From that portion of the district court’s memorandum of decision we have quoted above, it is evident that the federal court adjudicating the ERISA action actually ap *326 plied Alabama law in order to determine that the first wife’s claim to equitable relief had no merit because Stirling Brown committed no act in violation of the divorce judgment. Under the circumstances, the argument that the first wife had no opportunity to present her state law claim, and that she would have prevailed had her lawsuit remained in the Mobile Circuit Court, is unavailing.
The judgment of the circuit court is reversed and the cause is remanded for further proceedings.
REVERSED AND REMANDED.
YATES, J., concurs.
ROBERTSON, P.J., concurs in the result.

“4. In Rau v. Rau, 429 So.2d 593 (Ala.Civ.App.1982), the court was faced with a situation not unlike the one presently before the court. There, a divorce decree required Mr. Rau to keep in force and effect a 'then existing’ life insurance policy on his life which named his minor children as the beneficiaries. Some five years after his divorce, Mr. Rau changed jobs and companies and his new employer took out a $10,000 group life insurance policy on his life with his new wife as the named beneficiary. With that factual setting the court refused to find any basis in equity for attaching a constructive trust to the proceeds of the insurance policy. [The first wife] argues that the decision may be distinguished on the basis that the $10,000 policy in Rau did not exist at the time of the divorce, and that there was naturally, therefore, no evidence of an intention to fraudulently evade the equitable rights of the children under the decree. Whereas in the present dispute, she argues, Stirling Robert Brown intentionally dropped the policy with International Paper Company and took a new job with RUST International Corporation for the fraudulent puipose of evading her equitable interest and the order of the court. Apart from her unilateral conclusions and assumptions, however, there is absolutely no evidence that the change of jobs was for the fraudulent purpose of evading her interest or the court's decree. Moreover, by careful construction of the language of the agreement embodied in the Judgment of Divorce, there were available to [the first wife] numerous ways of securing an interest in subsequently maintained life insurance policies.”