In April 1996, Hazel Moncus, individually and as executrix of the estate of Julia Tatum, and Earl Perry sued David Keith Argo to set aside a deed from Tatum to Argo, on the grounds that Tatum was incompetent or that Argo exercised undue influence over Tatum. Moncus and Perry are siblings of Tatum. The siblings also alleged that Argo converted certain personal property of Tatum's which they contend is property of her estate. The siblings amended their complaint to allege that the real property deeded from Tatum to Argo had been owned by the Julia Perry Tatum Revocable Trust, not by Tatum individually, and that, therefore, the deed was void.
Both Argo and the siblings filed motions for summary judgment. The trial court entered a summary judgment for the siblings, and it denied Argo's post-judgment motion. Argo appealed to the supreme court, which transferred the case to this court pursuant to Ala. Code 1975, § 12-2-7(6).
A motion for summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. See West v. Founders *Page 220 Life Assurance Co. of Florida, 547 So.2d 870
(Ala. 1989), and Bass v. SouthTrust Bank of BaldwinCounty, 538 So.2d 794 (Ala. 1989), for a discussion of the application of the substantial evidence rule.
Argo had worked for Tatum for approximately 10 years as a sitter and as a handyman. Tatum became very attached to Argo shortly after she hired him. Argo testified that Tatum treated him like a grandson, and he treated her like his grandmother. In October 1992, Tatum created a trust, and conveyed her home to the trust. The trust was named the "Julia Perry Tatum Revocable Trust," and provided that Tatum was both the grantor (referred in Alabama case law as the "settlor") and the trustee. The trust instrument provided that upon the death of the Grantor the trust corpus would be delivered to Wayne Conley and Sheila Conley if they satisfied certain conditions, and if they did not, then the corpus would be delivered to Owen C. Perry. In May 1995, Tatum executed a deed purporting to convey her home to Argo, and reserving a life estate in the home for herself.
The siblings argued in their summary judgment motion that Tatum lacked the requisite mental capacity at the time she deeded her home to Argo, that Argo exercised undue influence over Tatum, thereby causing her to deed the home to him, and that Tatum's conveyance was void because the home was the property of the trust and not Tatum's individual property.
Argo first argues that issues of material fact exist as to whether Tatum was competent when she executed the deed purporting to convey her home to him. The siblings contend that Tatum lacked the requisite mental capacity to execute the deed.
 "In order to render a deed void because of the mental incapacity of the grantor — and the principle is the same for any other signatory — the test is `not merely that the grantor's mental powers were impaired, but whether he had sufficient capacity to understand in a reasonable manner the nature and effect of the act which he was doing.'
 "And `the burden of proof is upon the party attacking a conveyance to show the incapacity of the grantor at the time it is made, and insanity prior to that time does not raise the presumption of insanity at a subsequent time, unless it is shown that the insanity is permanent in its nature. . . . Therefore, proof of insanity at intervals or of a temporary character would create no presumption that it continued up to the execution of the instrument, and the burden would be upon the attacking party to show insanity at the very time of the transaction.'"
Hall v. Britton, 216 Ala. 265, 267, 113 So. 238, 239
(1927) (citations omitted).
The trial court admitted several videotapes, including one showing Tatum at her 100th birthday celebration, and one showing her shortly before she executed the deed. Both videos indicate that Tatum was alert, recognized her friends and relatives, and in the video made shortly before she executed the deed she explained why she wanted to deed her home to Argo. We conclude that issues of material fact remain as to Tatum's capacity at the time she executed the deed, and that the trial court could not properly enter a summary judgment for the siblings based on a conclusion that Tatum had lacked the necessary mental incapacity.
Argo next argues that the trial court could not properly base a summary judgment on the ground that Argo had exercised undue influence over Tatum, and by that influence had caused her to deed her home to him.
 "The party seeking to have the deed set aside need only show to the reasonable satisfaction of the court that the grantee was the dominant party in a confidential relationship with the grantor, whereupon the burden shifts to the grantee to show that the transaction was `fair, just, and equitable in every respect.'"
Chandler v. Chandler, 514 So.2d 1307, 1308 (Ala. 1987) (quoting Brothers v. Moore, 349 So.2d 1107, 1109
(Ala. 1977)).
There was no evidence that Argo was the dominant party in the relationship, and no evidence that they had a confidential relationship. Rather, the evidence is overwhelming that Tatum was the dominant party in *Page 221 
every relationship she had. She was the oldest child in her family, and she was regarded as the matriarch of the family. Therefore, the trial court could not properly base the summary judgment on a conclusion that Argo had exercised undue influence over Tatum.
In its summary judgment, the trial court stated that the May 1995 deed from Tatum to Argo did not revoke the trust, and that the deed was void. Argo argues that the deed did revoke the trust and that the trial court erred by entering the summary judgment for the siblings. Argo contends that the trust instrument did not constitute a valid trust, but was rather an "illusory" trust. A trust is illusory if the settlor
 "`reserves a substantial interest or unbridled control over management of the [trust assets] that is not for the benefit of the purported beneficiary. . . . In such circumstances, it has been stated that the settlor remains the owner of the property and there is no beneficiary.'"
Coosa River Water, Sewer Fire Protection Authority v.SouthTrust Bank, 611 So.2d 1058, 1062 (Ala. 1993) (quoting 76 Am.Jur.2d Trusts § 29 (1992)). The supreme court held in Coosa River that "a settlor may retain powers over the administration of the trust, but that, except in a declaratory trust, [the settlor] must give up control of the res or trust property itself." Id. at 1062-63. The siblings contend that the trust instrument created a valid declaratory trust. A declaratory trust
 "occurs when a settlor declares himself trustee of property for the benefit of another, the beneficiary. . . . In such a case, legal title is not really transferred to the trustee, but the settlor is merely separating legal title from equitable title."
Id. at 1062 n. 5 (citations omitted); see alsoJones v. Ellis, 551 So.2d 396 (Ala. 1989).
We conclude that the trust instrument created a valid declaratory trust. Although Tatum was both the settlor and the trustee, the trust instrument did name several relatives of Tatum as beneficiaries, and there is no evidence that Tatum "`reserve[d] a substantial interest or unbridled control over management of the [trust assets] that [was] not for the benefit of the purported beneficiar[ies].'" Coosa River,611 So.2d at 1062 (quotation omitted).
Argo next contends that Tatum's conveyance of her home to him revoked the earlier conveyance of her home to the trust. The siblings contend that Tatum did not effectively revoke the trust. The trust instrument provided:
 "During the lifetime of the Grantor, she reserves to herself the following rights:
 "(a) to amend, modify or revoke this Trust in whole or in part, at any time and from time to time, by written notice delivered to the Trustee."
Our supreme court has held:
 "`[T]he settlor may by express provision vest in himself a power to revoke or cancel the trust at will, or on the happening of a certain contingency.'"
Merchants National Bank of Mobile v. Cowley,265 Ala. 125, 132, 89 So.2d 616, 622 (1956) (quotation omitted). Therefore, Tatum as the settlor, in order to amend, modify, or revoke the trust, must have notified the trustee.
As stated above, Tatum was both the settlor and trustee of the trust. The trust instrument also provided:
 "Upon the death of the Trustee hereinabove named, Jack Floyd and John D. Floyd or the survivor of them, shall become the successor trustee over the entire trust estate with the same powers and duties hereinafter given to any Trustee."
The trial court concluded that Tatum, Jack Floyd, and John D. Floyd were cotrustees, and that Tatum did not notify the co-trustees that she was going to amend, modify, or revoke the trust by deeding her home to Argo.
The trust instrument provided that Tatum would no longer be the trustee upon the occurrence of one of four events; (1) her death, (2) an adjudication that she is incompetent; (3) a certification by a practicing physician that she is incompetent; or (4) Tatum decided to no longer be the trustee. When she executed the deed purporting to convey her home to Argo, none of those four *Page 222 
events had occurred. Therefore, Tatum was still a trustee at that time, and Jack Floyd and John D. Floyd had not become successor trustees.
The trust instrument defined the term "Trustee" as including "not only the Trustee expressly named herein, but also any and all successors at any time qualified and acting hereunder." Jack Floyd and John D. Floyd were not "successors . . . qualified and acting" pursuant to the trust at the time Tatum executed the deed. The trial court incorrectly interpreted the trust as providing for Tatum, Jack Floyd, and John D. Floyd to be co-trustees. The correct interpretation, based on the terms of the trust, is that Tatum was the sole trustee until her death; thus, she was the sole trustee on the date she executed the deed.
We now must determine whether Tatum as the settlor, was required to give written notice to herself, as the trustee. Our supreme court has held:
 "It is further established as a general proposition that where the settlor reserves a power to revoke the trust in a particular manner, he can revoke it only in that manner. Thus if he reserves power to revoke by a notice in writing to the trustee, he cannot revoke without such notice. But it has been held, and with good reason, that a provision for notice in writing is for the benefit of the trustee and may be waived by the trustee."
Merchants National Bank of Mobile v. Cowley,265 Ala. 125, 132, 89 So.2d 616, 622 (citations omitted). Because Tatum was both the settlor and the trustee, she — acting as trustee — could waive the requirement that as settlor she give written notice of any changes to the trust. In other words, Tatum was not required to give herself written notice that she was deeding her home to Argo.
Argo last argues that the trial court erred by entering summary judgment for the siblings on their claim requesting the return of Tatum's personal property. Argo did not present any evidence in opposition to the siblings' summary judgment motion; therefore, the trial court properly entered summary judgment for the siblings. Rule 56(c)(3), Ala. R. Civ. P.
We reverse the summary judgment for the siblings on all their claims except for their conversion claim, and the cause is remanded for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and YATES, MONROE, and THOMPSON, JJ., concur.